Lynn SINCLAIR et al., Appellants,

v.

Comer BROWNLEE, Appellee.

No. 3435.

Court of Civil Appeals of Texas.

Waco.

March 14, 1957.

Rehearing Denied March 28, 1957.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellants.

W. T. Bennett, Huntsville, Mac L. Bennett, Jr., Normangee, Robert E. Burroughs, Centerville, for appellee.

TIREY, Justice.

The action is grounded on negligence growing out of collision of an automobile with a cattle truck on Highway 75 in Montgomery County (non-jury). The cause was filed in Montgomery County and transferred to Leon County on plea of privilege (no contest).

In the judgment we find this recital: "* * * and the Court being of the opinion that the plaintiff Comer Brownlee is entitled to recover of and from the defendants, Lynn Sinclair and Rufus T. Johnson, personal property damages to the extent of $1,210.00, and the sum of $6,704.-05 as damages for personal injuries and damages resulting therefrom to the said plaintiff, Comer Brownlee, as alleged in her petition" and decreed that she recover from both defendants the total sum of $7,994.05. Defendants seasonably filed amended motion for new trial and, it being overruled,

gave notice of appeal to this court and have perfected their appeal.

Defendants seasonably filed motion for findings of fact and conclusions of law and we quote the pertinent parts thereof:

"1. I find that on December 27, 1955, at approximately 8:00 P.M., a collision occurred between a 1955 Model Chevrolet truck with a trailer attached bearing cattle frames thereon, owned by Lynn Sinclair and being driven by the defendant, Rufus T. Johnson, and a 1953 Buick automobile owned and being driven by Comer Brownlee. Such collision occurred on U. S. Highway No. 75 approximately two miles north of the town of Willis in Montgomery County, Texas. That Comer Brownlee is plaintiff in the above entitled cause. Lynn Sinclair and Rufus T. Johnson are defendants in the above entitled and numbered cause.

"2. At the time of such collision the automobile being driven by said Comer Brownlee was traveling in a general southerly direction on said Highway No. 75 at the aforesaid time and place; that at the time of such collision the aforesaid 1955 model Chevrolet truck, pulling the aforesaid trailer being driven by the defendant, Rufus T. Johnson, was traveling in a general southerly direction. That as said vehicles approached the point of the aforesaid collision, the automobile being driven by Comer Brownlee was in the lead or ahead of the truck and trailer being driven by the defendant, Rufus T. Johnson, and as each vehicle started ascending a hill in their southerly travel, while the vehicle being driven by Comer Brownlee was traveling and being driven in its right hand (west) lane, said Rufus T. Johnson started driving the aforesaid truck and trailer to the left of and around the vehicle being driven by said Comer Brownlee as said vehicles ascended

said hill on the east portion of said Highway No. 75. That as the said Rufus T. Johnson attempted to drive past the vehicle being driven by Comer Brownlee on said hill, the said Rufus T. Johnson then swung the truck he was driving across the center of said highway from the east to the west and into the lane of traffic occupied by the vehicle being driven by said Comer Brownlee, at which time and place the said Comer Brownlee, in attempting to avoid a collision between her said vehicle and the trailer being pulled by the truck being driven by Rufus T. Johnson, she applied her brakes and turned toward her right shoulder (west) of said highway, at which time and place the right rear end of defendant's truck abruptly collided with the left side of the automobile then being driven by Comer Brownlee. I find that as a direct and natural result of the collision, Comer Brownlee sustained personal injuries and the automobile owned by her and that she was driving on said occasion was damaged to the extent of $1,210.00. At the time of the *occurence* herein mentioned, Comer Brownlee, who was alone in the automobile that she was driving, was thrown therefrom and rendered unconscious.

"3. That at the time of the above mentioned collision, the defendant, Lynn Sinclair, was owner of the 1955 Model Chevrolet and the trailer then being pulled by the same. That at said time and said occasion, Rufus T. Johnson was then in the employment of Lynn Sinclair as a truck driver and was then driving said truck at the direction of the said Lynn Sinclair in route to a destination in Houston, Harris County, Texas, that he had been directed to go by the said Lynn Sinclair as his employer. That the employment of said Rufus T. Johnson, as an employee of Lynn Sinclair, was in the capacity of driving a truck.

That at such time the said Rufus T. Johnson was being paid by the said Lynn Sinclair to drive said truck to Houston and was driving the most true route from Oakwood in Leon County, Texas to Houston, Texas, and was then and there acting in the course and scope of his employment as a truck driver of and for Lynn Sinclair. That at such time and said occasion, one Dan Potts, who also worked for the said Lynn Sinclair was accompanying the said Rufus T. Johnson to Houston, Texas, in said truck.

"4. That the collision between the two above mentioned vehicles occurring of December 27, 1955, approximately two miles north of the town of Willis, and the resulting injuries sustained by said Comer Brownlee and the damages to the automobile which she was driving were each and all proximately caused by the negligence of said Rufus T. Johnson on the occasion in question in the following respects:

"(a)  Rufus T. Johnson was driving said truck and trailer to the left of the center of the roadway in attempting to pass Comer Brownlee's automobile at a point on said highway where passing was prohibited by Subsection 1, Section 57 of Article 6701d, Vernon's Civil Statutes of Texas.

"(b) Rufus T. Johnson attempted to pass Comer Brownlee's automobile by passing to the left thereof on the left hand portion of said highway when the left of said highway was not clearly visible and free of oncoming traffic sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the operation of Comer Brownlee's automobile, as provided in Section 56 of Article 6701d, Vernon's Civil Statutes of Texas.

"(c) That said Rufus T. Johnson was attempting to pass Comer Brown-

lee's automobile at the time and on the occasion in question.

"(d) Rufus T. Johnson drove said truck and trailer which he was operating at a greater rate of speed than a person of ordinary prudence, in the exercise of ordinary care, would have driven under the same or similar circumstances.

"(e) Rufus T. Johnson attempted to pass the automobile being driven by Comer Brownlee when the passing operation could not be made with safety.

"(f) Rufus T. Johnson was driving said truck at the time of the collision in question in willful or wanton disregard of the rights or safety of others and without due caution or circumspection, or at a speed or in a manner so as to endanger or be likely to endanger a person or property as provided by Sec. 51 of Article 6701d, Vernon's Civil Statutes of Texas.

"5. That Highway No. 75, at and near the scene of the collision made the basis of this suit on December 27, 1955, was a two lane highway marked with a center line down the center thereof. That the same was marked with a yellow stripe in the right hand lane thereof prohibiting passing of vehicles driving in the same direction and to the south thereon at the point where the collision made the basis of this suit occurred.

"6. Comer Brownlee was not guilty of any act or omission constituting negligence on the occasion in question. That Comer Brownlee did not fail to exercise that degree of care for herself or safety that would have been exercised by a person of ordinary prudence under the same or similar circumstances, and she was free of any negligence proximately causing or proximately contributing to the collision made the basis of this suit.

"7. As a natural result of the personal injuries sustained by Comer Brownlee as a direct result of the collision, Comer Brownlee suffered damages in the sum of $6,784.05. That as a direct result of the collision Comer Brownlee has suffered personal property damages in the sum of $1,210.00.

"Conclusions of Law

"1. That at the time and on the occasion made a basis of this suit, Rufus T. Johnson was driving said truck as the agent, servant and employee of the defendant, Lynn Sinclair, and was then and there acting in the course and scope of his employment.

"2. That each and all of the acts and omissions as set out in Paragraph No. 4 hereof on the part of Rufus T. Johnson in driving and operating said truck and trailer constituted negligence, and each said act or omission was a direct and proximate cause of the personal injuries suffered by Comer Brownlee and the damages directly and proximately resulting therefrom, and the damages to her said automobile directly and proximately resulted from said acts and omissions found herein to constitute negligence.

"3. That from my finding of fact under Paragraph 6 of the foregoing Findings of Fact, I hereby conclude that Comer Brownlee was guilty of no act or omission of negligence that proximately caused or contributed to cause the collision made the basis of this action.

"4. That plaintiff, Comer Brownlee, is entitled to judgment against Lynn Sinclair and Rufus T. Johnson, jointly and severally, in the amount of $7,-994.05, together with interest thereon at the rate of six per cent per annum from and after the 16th day of October, A.D. 1956 until paid, as well as all court costs incurred."

Appellants have assailed the judgment on eight points and we quote them substantially:

1. There is no competent testimony to support any finding that defendants were guilty of actionable negligence.

2. There is no competent evidence to support Finding of Fact No. 2, to the effect that the truck and trailer of the defendants was driven past the vehicle of the plaintiff and was then swung into the plaintiff's vehicle, the undisputed testimony of all competent witnesses and the undisputed physical facts showing conclusively that the accident occurred by reason of the fact that the plaintiff, who was driving her Buick automobile behind the defendants' truck and trailer, found herself unable to stop at her high rate of speed in the face of vehicles approaching from the opposite direction, and, as a result thereof, swung her car onto the shoulder to the right, throwing the left hand side of her car into the right rear corner of the trailer.

3. There is no competent testimony to support Finding of Fact No. 4 to the effect that the collision involved in this case was proximately caused by the negligence of the defendant Rufus T. Johnson on the occasion in question.

4. There is no competent testimony to support Finding of Fact No. 6 to the effect that the plaintiff was not guilty of any act or omission constituting negligence on the occasion in question, since the evidence conclusively shows that the sole cause of the collision was negligence on the part of the plaintiff.

5. The court's Conclusion of Law No. 2 is completely erroneous, for the reason that under the undisputed facts in this case, the defendant Johnson was guilty of no act of negligence proximately causing the collision involved in this case.

6. The court's Conclusion of Law No. 3 is entirely erroneous, for the reason that under the undisputed facts in this case, the sole cause of the collision involved herein was the negligence of the plaintiff.

7. The court's Conclusion of Law No. 4 is completely erroneous, for the reason that under the undisputed facts in this case, the plaintiff is entitled to no judgment whatsoever against the defendants below, and the proper judgment that should have been rendered was one that the plaintiff take nothing, and that all costs of suit be taxed against her.

8. If appellants are mistaken in their contention that there was absolutely no evidence to support the findings of the court to the effect that the collision in this case was proximately caused by the negligence of the defendant Johnson, then certainly such findings are so contrary to the overwhelming preponderance of the evidence as to be clearly wrong, and they should be set aside.

Appellants, in their brief, say substantially that the foregoing assignments present practically one point and for that reason briefs them together, and further say "the real point is that under the undisputed testimony in this case, considered with the laws of nature, no negligence on the part of the defendants could possibly have caused the collision involved in this case and, on the contrary, the sole cause of the accident involved here was the negligence of the plaintiff." Under the foregoing conditions, it is our duty to review the entire testimony, and this we have done very carefully.

Appellee (age 29) testified to the effect that on the evening of the accident, December 27, 1955, she had left her home in a 1953 Buick car and was on her way to a little town in Montgomery County by the name of Willis, which is seven or eight miles from her home, and that she was proceeding in a southerly direction in the right traffic lane of such highway at the time of the accident; that she left her home some 15 or 20 minutes prior to the time that she had the accident and the evidence was without dispute that it was raining and it was dark. She specifically testified:

"I started up this first hill and leveled off, and I was driving along in my lane of the highway, and as I stated I was going very slow, and I started up the next hill, and I thought about stopping at this little restaurant over on the left and didn't, and as I was driving along this truck passed me, and at the same time lights flashed across the hill and the cattle trailer was passing me, and I tried to put on the brakes when I saw the lights, and at the same time the cattle trailer pulled into me, and whether I got the brakes on I don't know, it all happened in one split second. I don't know anything after that. * * * I was not conscious of the truck being behind me; I was conscious of lights behind me. * * *

"Q. Then as you approached the scene of the collision I will ask you whether or not that is when the truck started pulling around you? A. Yes, as I approached it. * * *

"Q. Which side of you did this truck start around you, Comer? A. The truck started around me on the left hand lane and passed on that side of me." (The highway at the scene of the accident had two traffic lanes with wide shoulders and it ran approximately north and south.)

That as she neared the top of the second hill she noticed that the truck with which she collided was passing her to her left; that is, the truck had pulled out into the traffic lane provided for traffic going in a northerly direction, and after the cab of the truck got a little past her (the exact distance she did not know) she saw a flash of lights to the south and that immediately

the truck began pulling to its right into the traffic lane where she was driving and the lane provided for traffic moving in a southerly direction, and that she began to pull her car to the right, and that the left front door of her car collided with the right rear end of the cattle truck, which was loaded with cattle, and that was the last thing that she knew until she regained consciousness in the hospital.

"Q. Where was the truck and trailer in regard to your position on the highway when you first saw these lights that you told the court about that came over the hill? A. I saw a flash of lights coming over the hill at the same time that the trailer pulled into me and I tried to put on my brakes and turn to the right, I saw all that at one time. * * *

"Q. When you saw this, these lights coming over the hill, I will ask you whether or not at that time you observed the trailer? A. Yes, I observed the trailer pulling into me at the same time that I saw the lights and at the same time I tried to pull to the right. * * *

"Q. In that respect I will ask you whether or not you had actually turned your steering wheel to the right or not? A. I tried to turn it to the right all at one time, the lights, and the trailer pulling over and me trying to turn the car. * * *

"Q. At that time I will ask you whether or not you know the exact speed or the speed that you were traveling? A. I was driving slow. I did not look at my speedometer, but I know that I was going very slow, because I was in no rush at all. I was thinking about the 'phone call that I was going to make.

"Q. I believe you said something awhile ago about having thought there some place about stopping at a cafe or some place there at or near the scene

of the collision. Is that correct? A. Yes, I had. I was looking for this cafe to see whether or not it was open. It was closed. I took my foot off the accelerator looking at it long about the time this happened. I noticed that it was closed, and I had not accelerated again.

"Q. In that respect I will ask you whether or not you applied your brakes at all as you were observing the cafe? A. No, I had not applied my brakes.

"Q. Did you or not determine whether or not the cafe was closed for business? A. Yes, I did. It was closed. I was just looking. That was about the time that this truck pulled in and I saw the flash of lights."

Appellant tendered appellee's testimony by deposition as follows:

"Q. * * * In other words, the impact took place while your car was in its southbound lane on the pavement, is that correct? A. It was in its own lane, yes.

"Q. And you were traveling in a southerly direction? A. Yes.

"Q. At about forty-five miles an hour? A. Forty or forty-five.

"Q. Now, is that an estimate or did you happen to glance at the speedometer, or what are the facts about that? A. I didn't exactly look at the speedometer, but I wasn't in a hurry. I was going slow, and I'm certain I wasn't going any faster than that. * * *

"Q. And you say, at that time, you were driving at about what rate of speed? A. Forty to forty-five."

With reference to the truck behind her, she testified:

"A. I really noticed him at the time he cut out.

"Q. How far was he from your car, relatively, approximately how far was

he from you at that time? A. I couldn't estimate that.

"Q. Would you say that his front bumper was right up close to your rear end at that time? Did he cut out abruptly or was he back a considerable distance down the highway when he cut to his left in order to pass you? Or do you know? A. I really don't know what distance.

"Q. * * * Then your testimony is that you didn't pay any particular attention to the truck until you noticed it in the left hand lane. Is that correct? A. Yes, pulling around and passing me.

"Q. And you can't tell us any of the facts relative to the positions of your car and the truck until he was up about to the side of you. Is that correct? A. Until he started coming around me.

"Q. Until he started coming around you. Then actually your testimony is that the first you knew of him was when you saw his headlights shining down the left hand side of the road. Isn't that correct? A. Oh, I saw them start around to pass me but I couldn't tell whether they were way back, I mean, I couldn't truthfully say how close he was when he pulled out to pass me.

"Q. Were you paying any particular attention to him at that time? A. I wasn't until he started passing me.

"Q. Was that the time when you were looking to see if the lights were on at the store up there? A. I had my mind on it as I was driving along.

"Q. You had your mind on the store. And you had not at that time when he cut out, you had not slowed down your speed, had you? A. It was about that time that I took my foot off the accelerator. I did not put the brakes on. That naturally slowed my speed up. * * *

"Q. I understand that you have estimated the speed to be between 40 and 45 miles per hour. Of course, if the truck was passing you it would be going at a greater rate of speed than that, wouldn't it? A. I am not sure about what my speed was at that time.

"Q. Well we have gone all over that. But the truck was going at a greater rate of speed than you were? A. The truck started passing me, he passed me part of the way.

"Q. Did he pass you rapidly or did he just gradually creep up on you after he cut out into his left lane? A. * * * It took a while for him to pull out and pass.

"Q. Was he going just a slight bit faster than you were or a great deal faster than you were or what are the facts about that? A. Well, he was going a little faster than I was.

"Q. Just a little faster. A. I am not certain exactly how fast he was going. * * *

"Q. * * * If you don't know just say so. A. I am not certain what speed he was going. * * *

"Q. Was he going ten miles an hour faster than you were or forty miles an hour faster than you were or was he going about the same rate of speed in passing you slowly? A. I understand your question, but it is hard for me to answer.

"Q. You just don't know? A. No. * * *

"Q. * * * That truck consists of a tractor or a truck and a trailer all of which is some over 40 feet long. Now, you said the truck got up past your car, now what do you mean by that? A. I mean the cab and then part of the trailer.

"Q. You were driving and there was a driver of the truck. Did he get

up even with you before you saw these lights flash? A. He was farther up than that.

"Q. How much farther up? A. Way up.

"Q. I am speaking of the driver himself now. A. Yes. He was way up ahead of me before I saw the lights flash. * * *

"Q. Can you estimate how far south of you the driver of that truck was from where you were in your car? A. I had rather not.

"Q. It isn't a question of rather. A. I don't think that I could.

"Q. With any degree of accuracy. A. I don't think that I could. * * *

"Q. Well, you tell us what you know and describe to the court what you know relative to the position of those vehicles immediately before that light flashed in your face? A. Well, the cab was way up past.

"Q. You say way up. Go ahead. A. And the trailer was going up and it was back toward the end of the trailer because about that time the lights flashed and he started cutting in and I started trying to pull to the right so I could get off on the shoulder."

Appellants in their brief say: "Plaintiff's story, completely discredited by all of the other witnesses in the case, the many pictures taken and offered in evidence, and the physical facts * * *." As we understand appellants' position, it is to the effect that since the driver of the cattle truck and his companion both testified to the effect that they did not pass the appellee going up the hill and that they were in the right traffic lane going in a southerly direction when appellee's car collided with the rear end of their truck, and since the only skid marks on the highway were the ones in the right traffic lane, and since the drivers of the two buses going in a northerly direction saw the cattle truck before the accident happened, and saw it in its right traffic lane and saw the Buick car approach the cattle truck at a high rate of speed, one witness placing it as much as 55 miles per hour, and since one of the bus drivers, seeing the position of the cattle truck in the right traffic lane and the approaching Buick, realized that an accident was impending, and so stated to a passenger on the bus, and since an examination of all the exhibits tendered in evidence are to the effect that there were no scratches on the car except to the left door and top and left side of the Buick, there being an absence of any scratches or marks showing contact with the front of the car, that appellee's contention that the accident was caused by the cattle truck pulling sharply to the right and cutting in front of her is in conflict with all of the disinterested testimony tendered in this cause and that the appellee's theory, as well as the court's findings, are without any basis of fact whatsoever, and that such findings by the trial court are in conflict with all of the physical facts and surrounding circumstances and are in contradiction of the law of physics.

Needless to say, this cause has given us great concern, but the great weight and preponderance of the testimony is not determined by the number of the witnesses tendered. The trier of the facts had the right to take into consideration the demeanor of the witnesses and determine the credibility of each witness under all the facts and surrounding circumstances, and to find the facts. As we understand appellants in their brief and their counsel in argument before the court, appellee's entire story as to how the accident happened is unbelievable and that it is and was a physical impossibility for the accident to have happened in the manner that she says. Appellants' counsel undertook to demonstrate the impossibility of appellee's story in his argument by using two toy automobiles, one representing the cattle truck, which was somewhat larger than the toy automobile representing the Buick car. In this demonstra-

tion it was appellants' contention that the cattle truck could not have pulled out for the purpose of passing the Buick car and cut in front of it without there being some marks or scratches on the front end of the Buick car. As we understand the testimony, the trailer part of the truck was some higher than the front part of the Buick car, but whether the bed of the cattle truck was higher than the front end of the Buick would not necessarily determine the way the accident happened because the testimony of the appellants and appellee is consistent in part in that it is to the effect that appellee pulled her car to the right. How quickly and how sharply she pulled her car to the right and the angle at which the truck cut into her traffic lane, if it did so, would necessarily have some effect as to what part of the Buick car struck the right rear end of the cattle truck. The appellee testified to the effect that she had a high school education, had done work in Baylor University and the University of Texas, lacking a little more than a year of having graduated from the University of Texas. She seemed intelligent; her testimony indicates that she seemed to know what she did know and was hesitant to testify to something that she was not sure about and tried to get away from making estimates because she said she did not know, and we think her testimony is consistent throughout as to the way the accident happened. Her story of the way the accident happened is in direct and irreconcilable conflict with all the other witnesses who testified in the case, save and except that she testified she pulled her car to the right immediately before the accident happened. Since the trial court heard appellee's story and believed her, we do not believe we are authorized to say that under all the facts and circumstances that it is not true. As a reviewing court, it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. Moreover, "Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is 'raised if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" (Citing cases.) See Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 514, points 8 and 9 (writ ref.). Moreover, "'The rule is well settled that the judgment of the trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings.' See Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 977; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286. See also cases collated under 4 Texas Digest, Appeal & Error, ⬤1010(1)." Burrus Mills v. Phillips, Tex. Civ.App., 260 S.W.2d 427, 430 (no writ history). We are of the further view that the statement of the rule in Re King's Estate, 150 Tex. 662, 244 S.W.2d 660, does not authorize us to overturn the findings of the trial court.

Accordingly, each of the points tendered by appellants is overruled and the judgment of the trial court is affirmed.