ROYAL INDEMNITY COMPANY,
Appellant,

v.

C. M. KENNEDY, Appellee.

No. 16907.

Court of Civil Appeals of Texas.

Fort Worth.

March 22, 1968.

Rehearing Denied April 19, 1968.

Stone, Tilley, Parker, Snakard, Law & Brown, and Lawton G. Gambill, Fort Worth, for appellant.

Woodruff, Hill, Bader & Kendall, and David M. Kendall, Jr., Dallas, for appellee.

OPINION

RENFRO, Justice.

Based upon jury findings, judgment was rendered for plaintiff Kennedy against Royal Indemnity Company for workmen's compensation benefits for total and permanent disability.

The first point presented by defendant reads, "The trial court incorrectly defined 'Total Incapacity' in its charge to the jury."

The court's definition was, " 'Total Incapacity' does not mean an absolute disability to perform any kind of labor, but a

person disaqualified from performing the usual tasks of a workman in such a way as to be able to procure and retain employment is totally incapacitated. The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular trade or occupation."

Defendant's argument, in essence, is that the definition instructed the jury that a person could be totally incapacitated without regard to whether or not he was able to procure and retain employment.

The first sentence of the court's definition of "Total Incapacity" is the standard definition of that term as used in this jurisdiction. Texas Employers Ins. Association v. Hawkins, 369 S.W.2d 305 (Tex.Sup., 1963).

The second sentence of the definition was taken from Texas Employers' Ins. Association v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (1944), wherein the Supreme Court, referring to "total incapacity," stated: "The term implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular one trade or occupation." It is true those words were not included in the definition of total incapacity in Mallard, but were approved as a statement of the law after the court had disapproved of the words, "in the usual occupation which he is suited to perform," which were included in the definition in that case.

We fail to see the vice the defendant professes to see in the definition. Properly construed, it instructs the jury that in order to prove total incapacity, as that term is defined in the first sentence, the plaintiff must go further than prove he cannot perform the usual tasks of his particular trade or occupation, but he must prove incapacity to perform the usual tasks of a workman. It seems the time-honored Supreme Court approved standard definition of "Total Incapacity" would have sufficed in this case.

It may be that inclusion of the last sentence could in some instances constitute error, nevertheless such could not be reversible error in the instant case because under the evidence the inclusion was in the defendant's favor, and not prejudicial.

In its remaining points defendant argues that the jury's answers finding plaintiff totally and permanently disabled are so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust and wrong.

Since we must consider and weigh all the evidence to determine such points, In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), our summary of the testimony will necessarily be quite lengthy.

Plaintiff testified: he is 36 years of age. He worked for General Motors ten years. On November 4, 1963, while working as a spot welder he had occasion to move a "jig" and while moving it "got a catch" in his back. Within three or four hours he reported his injury to his foreman and was sent to the hospital where he was given heat treatment. Next day he could hardly get out of bed. The following day he returned to work and took heat treatments from the plant doctor. He hurt in his lower back below the belt line. He got no better and went to Forth Worth for treatment by Dr. Pumphrey. He got no better. Soon thereafter he went to Dr. Key and received therapy while continuing to work. Therapy treatments had no effect on his pain. He continued to work for about two years, alternating between light and heavy work, but his back hurt and he could not work without pain. The pain was present when he did lighter work and he had to return to the doctor. Dr. Key was company doctor. Plaintiff's back grew progressively worse from the time of the original injury. He requested the Insurance Company to send him to another doctor, but the Company said it was satisfied with Dr. Key and refused his request. Before leaving General Motors he had decided to become a missionary, but he would have quit General Motors anyway because he could no longer do the work because of his back. He could

not have worked any longer. The Company paid Dr. Key. Since leaving the job his back has been getting worse. When he drives he uses a back brace. At time of trial he was raising money for the mission field in Mexico. The church pays a missionary $10 per month. Due to the condition of his back there is no job he knows of where he could do day to day work. His back hurts when he walks, mows the lawn or tries to lift weighty objects. As a result of helping to lift an ice box he was "layed up" for two weeks. He does not feel that he can ever hold down any laborer's job in the future.

His work raising mission funds requires him to drive to several different states. He has at times let months go by without seeing a doctor, because he could not afford to pay one and the Company refused to pay anyone except Dr. Key. After leaving General Motors his income dropped from $160.15 per week to $50 per month.

Plaintiff's wife testified plaintiff was very active and energetic before the injury, but after the injury he is always tired, has ceased to do yard and household chores and no longer hunts and fishes. He requires much more rest than formerly. In her opinion plaintiff is getting no better.

Dr. Key, orthopedic surgeon, called by defendant, saw plaintiff November 25, 1963. Plaintiff could bend forward three-fourths of the normal range. The doctor concluded plaintiff had sustained a soft tissue injury of his back. Many of the most disabling back injuries are soft tissue injuries, though he did not believe plaintiff's injury was very serious. He saw and examined plaintiff several times up to January 3, 1964. In the meantime he had prescribed therapy treatments. X-rays showed a little bit of "peaking" of the ends of the vertebrae in some areas. On January 3, plaintiff was doing pretty well. Examination showed no signs of pinched nerves in the lower extremities, his condition was good. Plaintiff visited him again in December, 1964.

Plaintiff said he was still having pain in his lower back. Examination showed he had some muscle impairment. Plaintiff returned on June 1, 1965. Plaintiff could bend forward pretty well. Therapy was recommended until he returned September 11, 1965. At that time it was doctor's opinion plaintiff was able to perform a good day's work, but not able to perform bending and lifting jobs. He would have pain and problems and be off work if he did. In other words he would be a poor candidate for a job that involved repetitious bending and heavy lifting. He estimated plaintiff had a five per cent permanent physical impairment to the back. He last saw plaintiff January 30, 1967. His permanent percentage of disability was still five per cent. He classified the injury a sprain or some type of injury to the disc. Plaintiff's condition is permanent. Plaintiff's ability to procure and retain employment as a workman was not included in the doctor's estimate of percentage of disability. In fact, he was sure some employers would turn down a man with five per cent anatomical disability.

Dr. Kresh, called by the plaintiff, examined plaintiff September 28, 1965. He found plaintiff had a loss of normal lumbar spine curvature, there was some concomitant para lumbar muscle spasm, which meant the muscles along the spine, the lumbar vertebrae were in spasms and tender to palpation. There was some wedging of the thoracic vertebra and some osteoarthritis changes in his lower dorsal spine. "What this patient has is an instability of his back because of ligamentous soft tissue damage. The ligaments supporting the vertebra, the tendons, the muscles that support all this area are weakened and traumatized. * * Traumatized means injured. * * * And because of this the back is unstable and is subject to injury and reinjury at the minimal provocation. * * *" He examined plaintiff again on May 16, 1967. Essentially the findings were about the same as they were on September 28, 1965. The plaintiff is totally disabled and the disability is permanent.

Defendant does not question the fact that plaintiff was injured on November 4, 1963, in the course of employment and such injury was the proximate cause of some permanent incapacity. Its objection goes only to the finding of total incapacity.

The evidence shows that plaintiff continued to work without reduction in amount of wages for a considerable length of time.

 A judgment will not be reversed merely because there is evidence showing the disabled employee is in fact working and earning money regardless of the amount of money being earned. Such proof constitutes a part of the factual evidence which may and should be taken into consideration by the jury in answering the issues upon incapacity or disability, but does not, as a matter of law, preclude the award of compensation even for total and permanent disability. Trinity Universal Ins. Co. v. Scott, 342 S.W.2d 348 (Tex.Civ.App., 1961, ref., n. r. e.); Aetna Casualty and Surety Co. v. Curlee, 416 S.W.2d 890 (Tex. Civ.App., 1967, no writ hist.); 63 Tex. Jur.2d, p. 20, § 140.

Actually at the time of trial, so far as the record shows, plaintiff's income was drastically less than it was at the time of injury. He testified he quit General Motors to become a missionary, and because he was no longer able to do the work, and added that his injury would have forced him to quit regardless.

 The determination of whether he was unable, because of the injury, to continue to work was in the province of the jury.

 The jury had the exclusive power to determine the credibility of the witnesses and the weight to be given their testimony. Mitchell v. Texas Electric Service Co., 299 S.W.2d 183 (Tex.Civ.App., 1957, ref., n. r. e.). In exercising its power the jury may consider the demeanor of witnesses and determine their credibility under the facts and circumstances of the particular case. Sinclair v. Brownlee, 300 S.W.2d 103 (Tex.Civ.App., 1957, ref., n. r. e.). It may accept part of a witness' testimony and reject other parts, and may determine not only the facts proved but also any reasonable inferences that may be drawn therefrom. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

 In our opinion the evidence is such that the jury findings have ample support, and in view of all the evidence, both for and against the verdict, the findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust or wrong.

We are therefore not at liberty to disturb the verdict and judgment.

Affirmed.