**ROYAL INDEMNITY COMPANY,**
Appellant,

v.

**O. G. SMITH, Appellee.**

No. 17124.

Court of Civil Appeals of Texas,
Fort Worth.

June 5, 1970.

Brown, Crowley, Simon & Peebles, and
Paul Peebles, Fort Worth, Tex., for appel-
lant.

Herrick, Jones & Bell, and John W.
Herrick, Fort Worth, Tex., for appellee.

OPINION

BREWSTER, Justice.

A jury in a Workmen's Compensation case found the plaintiff to be totally and permanently disabled. A judgment for benefits for that type injury was rendered in his favor. This appeal by the insurer, urging 5 points of error, is from that judgment.

By its first 4 points appellant contends that the evidence offered during the trial was insufficient to support the jury's findings of total and permanent disability and, further, that the jury's findings to that effect are so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

This is another of those cases where at the time of the trial plaintiff was working and was being then paid about the same pay that he was earning when hurt.

We have examined the entire statement of facts. In deciding questions of insufficiency of the evidence this court is required to view the evidence as a whole and give weight to all of the evidence. Texas Employers' Insurance Ass'n v. Washington, 437 S.W.2d 340 (Dallas, Tex.Civ.App., 1969, ref., n. r. e.).

The statement of facts shows the following material testimony:

The plaintiff was 32 years old, married, and had 5 children. When hurt he had been working for General Motors, his employer, for the last 7½ years. Before that he had worked as a roughneck in the oil fields for 8 years. This was heavy work. He had done bareback and bull riding in rodeos. Before being hurt on March 20, 1969, he had always had a good back and was in good shape. Before being hurt his duties at General Motors included carrying tools and bolts weighing 80 to 90 pounds, bending over all night long, and placing wheels and steering columns on cars. You had to have a good back to do that type work.

On the day he was hurt a trash wagon weighing about 2,000 pounds had become stuck on a track that it rolled on, and while helping four or five other men pull out the wagon to keep it from falling into a pit, plaintiff felt his back give. His back then started paining him. He went to the hospital that day, where they applied heat. The next day he went to his family doctor, who gave him pills and shots. He saw this doctor each day for the next two weeks thereafter for treatment. He did not work at all for 5 weeks following the injury. At the end of these 5 weeks his back was still bothering him, but he needed to go back to work, so his doctor let him go back on light duty where he had nothing to lift weighing over 20 pounds, and did not have to bend much. He had worked continuously from that time to the trial date, but had not had to do hardly anything on the job. He has tried to do lifting to see how his back is affected and when he bends over, he just cannot straighten up. Based on the way he felt at trial time and the experiences he has had with his back since hurting it, he feels that if he had to get out on an open labor market and hold down a job requiring him to bend, lift and stoop, he would not be able to hold down such a job. Soon after going back to work following his injury, he was elected as an alternate committeeman for the Union. Since then the time he has spent on the job has been largely spent running errands. He also did work on the "balcony" job that does not involve stooping and bending. An 80 year old grandmother with arthritis could probably do the work called for by this job he has done since he was injured. Before getting hurt he could ride a horse all day long, but can only stay on one about 15 minutes now, because it bothers his back. The doctor fitted him with a back brace and he does not wear it all the time. He has tried saddling a horse and can barely get the saddle on because when he starts up with it his back hurts. He has worked some overtime since being hurt and this was mostly because he was an alternate committeeman and had to stay with the

men when they worked overtime. He earned $9,072.00 at General Motors during the year just before he was hurt and during the 6 months he has worked since being hurt he has made $4,295.69 at General Motors. About September 16, 1969, he was on a job where he had to bend over a lot to pull the hood latch and raise the hood. He did this for 1½ days and his back began bothering him again. He could not sleep and when he got up his back was stiff and he could hardly straighten up. They then put him back on the balcony job where he could stand straight and work.

Dr. Browder examined him on March 21, 1969, and found plaintiff with muscle spasm in the low back. He treated him with muscle relaxants, pain medicine, heat, and fitted him with a back brace. He saw plaintiff in June, 1969, and he was then having low back pain and trouble in bending and stooping. In September, 1969, he saw plaintiff again and he was still having low back pain, difficulty in bending and stooping and muscle spasm. He x-rayed plaintiff's back in May, 1969. This showed a straightening of the curvature of the lumbar spine. This finding is abnormal and indicates muscle spasm, which is evidence of injury. He x-rayed plaintiff's back again in October, 1969. These showed a more pronounced straightening of the curvature of the lumbar spine than the first x-rays showed. He also had muscle spasm in October, 1969. He thinks the injury plaintiff got was low back strain and that by October, 1969, he had reached a plateau of recovery. Because of his back problem he is limited in the amount of stooping and bending he will be able to do. The lifting of weights of from 20 to 40 pounds would probably cause him pain. He would not pass plaintiff on a pre-employment physical for a job that required bending, stooping, climbing and lifting. He thinks the injury was the producing cause of plaintiff's disability.

The plant doctor at General Motors was a witness and testified as follows: that spastic muscles are painful when moved; if a person has muscle spasm that is severe or disabling and has had it for 7 months following an injury he ought not to be doing work calling for bending, lifting or stooping; a straightening of the lordotic curve in the low back can indicate muscle spasm; a person with muscle spasm has certain restrictions as to what he can do; he does not want a person with a bad back to do a lot of bending and lifting because it would probably cause pain and muscle spasm; and if muscle spasm lasts more then 3 or 4 weeks after an injury the man has something more than a muscle or tendon strain.

A witness, Harold Covington, testified as follows: he has known the plaintiff for 5 years and before getting hurt he could do his job like anyone else; he also works at General Motors and has observed plaintiff and can tell that his back has been bothering him practically all the time by the way he got around; he has not seen plaintiff do any work for any period of time requiring him to bend or lift.

E. J. Bartosh, another General Motors employee, testified: he has known plaintiff 5½ years; since the injury he has seen plaintiff mostly standing up and not doing any bending or lifting; plaintiff has asked him for help in lifting; plaintiff does not move around since the injury like he did before.

Jack Brown, another General Motors employee, testified: he had known plaintiff for 4 years; before getting hurt he could work like anyone else; since the injury he cannot get around like he could before and acts like he is in pain; you can tell it by the way he walks; he has been on the balcony job lately, which does not require bending or lifting and has spent most of his time just running errands.

Appellant offered witnesses who testified that plaintiff works on the balcony job which requires stooping and bending and that he gives no appearance of it bothering him in any way. They say he did his work satisfactorily.

The General Motors plant doctor also testified further as follows: he examined plaintiff in May, 1969, when he returned to work; he then manifested no discomfort; x-rays of his spine were normal; and that at that time there was no evidence at all that plaintiff had a physical impairment to his back; and he observed no muscle spasm.

The following is from the opinion in the case of Travelers Insurance Company v. Wade, 373 S.W.2d 881 (Dallas, Tex.Civ. App., 1963, ref., n. r. e.):

■ " * * * it is well settled that the factual testimony of a claimant alone, or of other lay witnesses, will support a jury finding of total permanent disability. The jury may reasonably infer total and permanent disability from circumstantial evidence. And this is true though the lay evidence may be contradicted by the testimony of medical experts."

The following cases also support this legal proposition: Hartford Accident & Indemnity Co. v. Ferguson, 417 S.W.2d 376 (Fort Worth, Tex.Civ.App., 1967, ref., n. r. e.); Texas Employers' Insurance Ass'n v. Washington, 437 S.W.2d 340 (Dallas, Tex. Civ.App., 1969, ref., n. r. e.); and Travelers Insurance Company v. Arnold, 378 S. W.2d 78 (Dallas, Tex.Civ.App., 1964, no writ hist.).

■ A number of cases have held that the fact that a workman keeps working after he is hurt and earns more money after the injury than he did before is not controlling on the question of whether he was permanently and totally disabled. This fact is evidence to be considered by the jury along with the rest of the evidence. See Travelers Insurance Company v. Buffington, 400 S.W.2d 800 (Eastland, Tex. Civ.App., 1966, ref., n. r. e.) and cases therein cited on this point.

The following cases are authority for the proposition that the evidence in this case was sufficient to support the jury

finding of total permanent disability: the Buffington case, supra; Royal Indemnity Company v. Kennedy, 426 S.W.2d 615 (Fort Worth, Tex.Civ.App., 1968, ref., n. r. e.); United States Fire Insurance Company v. Huckabee, 452 S.W.2d 565 (Eastland, Tex.Civ.App., 1970); and Trinity Universal Insurance Company v. Scott, 342 S.W. 2d 348 (Fort Worth, Tex.Civ.App., 1961, ref., n. r. e.).

■ The opinion in the Arnold case, supra, said:

"Any doubt we may have as to whether this evidence actually supports the jury finding of permanent incapacity must be resolved in favor of the right of the injured workman to receive compensation. Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315, 318; Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73.

■ "The jury had the right to believe all of appellee's testimony and, observing what they could of his physical condition in the court room, to conclude that he was totally disabled and that such incapacity was permanent. (Cites cases.) Total incapacity does not mean an absolute incapacity to perform any kind of labor, but a person so physically disabled that he cannot perform the usual tasks of a workman in such manner as to be able to procure and retain employment, is in law considered totally incapacitated. * * *"

■ When we apply the law as announced in the above cited cases to all the evidence that was introduced during the trial, and at the same time bear in mind what the legal definition of "total disability" or "total incapacity" is, we are not convinced that the jury's finding of total permanent disability in this case is so against the great weight and preponderance of the evidence as to be manifestly unjust.

We therefore overrule the insurer's first four points claiming insufficiency of the

evidence to support findings of total and permanent disability.

By its 5th and last point appellant contends that the trial judge committed reversible error in overruling the objection made by its counsel to a hypothetical question propounded to Dr. Browder by plaintiff's counsel. This particular question was very long. It fills 2½ pages of the statement of facts. It called upon the doctor to assume the truth of many facts in answering the question, and then asked him, "* * * assuming all those facts doctor, do you have an opinion as to whether or not he (plaintiff) sustained an accidental injury when he lifted the trash wagon on the occasion in question, and whether or not that was a producing cause of the disability that you've described?"

The objection urged by appellant's counsel was as follows:

"Your Honor, I object to the question because counsel has assumed a number of things which have not been proved in evidence, and it in effect asks the doctor to guess and speculate on assumptions that are not before the court and jury."

The court overruled the objection.

It is not error for a trial judge to overrule an objection such as the one urged by appellant in this instance. The reason for such holding is because such an objection is too general in that it fails to point out to the trial judge which particular facts, of the many that the witness is asked to assume as true, it is that appellant is contending is not supported by evidence in the case. See Employers' Liability Assur. Corporation v. Young, 34 S.W.2d 622 (El Paso, Tex.Civ.App., 1930, error dismissed) and Provident Life & Accident Ins. Co. v. Holt, 27 S.W.2d 556 (Texarkana, Tex.Civ. App., 1930, error dismissed).

Appellant's point 5 is overruled.

The trial court's judgment is affirmed.