## TEXAS & N. O. RY. CO. v. PARRY et al.
(No. 1144—5097.)

Commission of Appeals of Texas. Section A. Jan. 23, 1929.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for plaintiff in error.

Ewing Werlein and Devereaux Henderson, both of Houston, for defendants in error.

CRITZ, J. This suit was originally instituted in the district court of Harris county, Tex., by Mrs. Emma Parry and her husband, defendants in error in this court, against the Texas & New Orleans Railway Company, plaintiff in error, for the recovery of damages because of the alleged negligence of the railway company in allowing a rubber matting on the platform or step of one of its passenger coaches to become worn and defective. It is alleged in substance that Mrs. Parry was attempting to alight from a coach belonging to the railway company, and that she caught her foot in this defective matting on the platform or step of said coach, and was thereby caused to fall from said platform down the steps to the ground, said fall resulting in the injuries complained of. The railway company answered by general denial, and especially pleaded that the injuries were the proximate result of the plaintiff's own negligence, and contributory negligence. The case was tried before a jury on special issues. On the verdict of the jury on such issues, judgment was rendered for Mrs. Parry and husband against the railway company for $20,000. This judgment was duly appealed to the Court of Civil Appeals for the Sixth District, which court affirmed the judgment of the district court, and the case is now before this court on writ of error granted on application of the railway company.

By proper assignments of error the railway company contends that the judgments of the district court and of the Court of Civil Appeals should be reversed on account of the misconduct of the jury, in mentioning and discussing, while deliberating on the amount of the damages, the fact that the attorneys would get a part of the recovery, and also in mentioning and discussing the fact that the railway company had a fund set aside to pay such claims as the one on trial, and also in discussing certain other matters not necessary to mention here. We are of the opinion that the trial court committed error in not granting a new trial on account of the undisputed fact that, after the jury had agreed on answers to special issues which rendered the railway company liable to the plaintiff in damages, but before the jury had agreed on the amount of the damages, it was stated in the presence and hearing of at least several members of the jury, by some member or members thereof, in effect, that the attorneys would get a part of the judgment, and that the railway company had a fund set aside to pay for such accidents as is involved in the case on trial. Practically all of the jurors who tried the case were sworn as witnesses on the trial of the issue of misconduct on the hearing of the motion for new trial. The testimony is very voluminous and covers 43 pages of the transcript, and no good purpose would be served by repeating it here. The juror S. J. Ammons was offered as a witness by the railway company, and he testified in substance that the jury first agreed on answers to the question which submitted the issues of the liability of the railway company for the injuries complained of, and that, while they were considering the amount to be awarded, there was mention made about attorneys'

fees, and also some one said there was a certain amount set aside for these accidents. This witness states that the matter of attorneys' fees was mentioned several times.

The witness Ammons also testified, in part, as follows:

"There was also a discussion about attorney's fees. I could not say positively who discussed or mentioned it, but it was discussed, some one said that there was a certain amount set aside for these accidents, and some of them said that the attorney sometimes got one-fourth and sometimes one-third."

"There was a statement that was made with reference to a fund the railroad company set aside to pay judgments and claims. The real estate man said that."

"With reference to your question that these discussions I have described about the attorney's fees and invalid wife and the other lawsuit where the man was a juror and a fund being set aside, and with reference to whether that took place before we finally arrived at the amount of the verdict, my answer is, 'Yes, before the final verdict was written down and before we decided on it.'

"It is a fact when I got out there and gave my verdict that I tried to follow the instructions of the court. In passing on the verdict and answering those issues and giving the amount we found, I tried to rely on the evidence given by the witnesses and the charge of the court, I relied on what we were told by the Judge. The fact that another man had sit as a juror in a certain other case did not have anything to do with me in this case we were trying for Mrs. Parry. The fact that another man had a sick wife had nothing to do with this case, I know there is lots of sick women. When I allowed this amount I was not interested in the other cases, that is what I was trying to do. With reference to me coming up to fifteen thousand dollars and that I did not give that to cover attorney's fees, that I was giving it to Mrs. Parry under the instructions of the Court, my answer is, 'Yes sir.'

"With reference to your question, 'There was no discussion of the attorney's fees, but there was a mention of it, and immediately on mention of it, Mr. Brittingham called them down and said do not discuss that,' my answer is 'I think so, but it was discussed at different times.' With reference to something being said about attorney's fees and Mr. Brittingham called him down and no more was said about it; it was discussed two or three times, but Mr. Brittingham called ed them down. Some said the attorney would get half, and some said they take it for one-third, and the real estate man said they set aside a fund. No one said they would get more than half. No one allowed more than half for the attorney's fee.

"With reference to your question, 'As a matter of fact they did not allow anything for attorney's fees, they allowed it to Mrs. Parry's,' my answer is 'Sure.' I could not say that they were not influenced by any of those discussions. I tried not to be. I have no interest in this case. With reference to whether I am willing for Mrs. Parry to get the judgment I gave her, my answer is, 'I guess so.' I was not doubtful about whether I am or not at the time I rendered the verdict.

"With reference to your question, 'It seems that I have changed my mind, and why do I hesitate to answer,' my answer is, 'Because I have not been exactly satisfied with the verdict I rendered.' With reference to whether I was dissatisfied before or after I went to see the attorney for the railroad, my answer, 'I was dissatisfied, that is the reason I went to see him.' I did not go to see him before he called me, he called for me Monday morning, I did not know if any of the rest of the jury were there, I have not seen any of them only this morning.

"The fact that some one said there was a fund set aside, that did not make any difference to me as far as the fund was concerned, I realized that without the man telling me about it. That didn't make any difference with me. On arriving at the verdict, I agreed on the amount with the others. I did that solely on the basis of the evidence submitted to the jury from the witnesses on the stand and the charges and ruling of the court, that is I tried to. With reference to this mention of attorney's fees was just a casual matter, my answer is 'It was a casual matter several times.' Mr. Brittingham called them down once, and I told them I did not figure the attorney's fees myself."

"I did not allow any of this twenty thousand dollars for attorney's fees. I remember when you empaneled the jurors that you instructed us not to discuss or consider attorney's fees, and I tried to follow your instructions. I mentioned in the jury room your instructions and Mr. Brittingham mentioned it. I do not remember who discussed the attorney fees outside of Mr. Jordan, but I am sure that Mr. Jordan did and this furniture man mentioned it, there were two or three mentioned it I know. It was mentioned more than the one time."

Nearly if not all of the other jurors were offered as witnesses by the plaintiff in the trial court, and the substance of their testimony is to the effect that the matter of attorneys' fees was mentioned only once, and that the juror who mentioned it was called down by the foreman and told that they could not consider that matter, and also that the matter of a fund being set aside to pay such claims was mentioned once, and all this while the jurors were considering the amount of the verdict. Some of the jurors testified

to having heard the remarks, and some testified that they did not hear them at all. All of the jurors except the juror Ammons, who testified to hearing the remarks, stated that they were not influenced thereby, and arrived at their verdict solely on the law. as given them in the charge of the court and the evidence permitted to go before them under the ruling of the court.

We think that, as shown by the above record, it is certainly reasonably doubtful as to whether or not the juror Ammons was influenced in the amount of his verdict by the mention of attorneys' fees, and the statement in regard to the setting aside of a fund to pay claims. Under the Constitution and laws of this state, litigants are entitled to a verdict from each of the twelve jurors returned solely on the evidence permitted to go before them under the rulings of the court. Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104.

In Traction Co. v. Wilson, supra, the Supreme Court, speaking through Presiding Judge Powell of the Commission, says:

"Applying the rule laid down by our Supreme Court in the Gray Case [105 Tex. 42, 143 S. W. 606], the court itself will set aside a judgment and order a new trial, where all the evidence, considered as a whole, taken by the trial judge on the hearing of the motion for a new trial, leaves it reasonably doubtful to the Supreme Court as to whether or not the improper conduct of the jurors affected the amount of the verdict. The Supreme Court will not look to one portion of the evidence alone, or to another part alone. But it will and should consider the record as a whole upon the point in controversy.

"Now, looking to the evidence taken upon this hearing, we may concede, for the purposes of this case, that eleven of the jurors, from their evidence and the agreement as to their evidence, were not influenced by the discussion of the attorneys' fees in the jury room. But, after carefully reading all the evidence of the juror Moore, given before the trial judge on the hearing of the motion for a new trial, we are forced to the conclusion, to put it very mildly, that it is reasonably doubtful as to whether or not such juror was influenced by said improper discussion. That being true, we feel that the Supreme Court should exercise its authority and set the verdict aside. Under our system of jurisprudence, parties litigant are entitled to a verdict returned by each of the twelve jurors solely upon the law and the evidence permitted by the court to be introduced upon the trial. If outside matters are discussed in the jury room, and its effect upon the verdict is reasonably doubtful, the doubt should be resolved in favor of keeping jury verdicts free from suspicion and in favor of those against whom the improper conduct

was committed. If verdicts of juries are to continue to be respected, as they should be, they must be safeguarded with eternal vigilance from every outside influence of any character.

"In this case the evidence of all the jurors who took the stand develops no conflict as to what happened there. The discussion as to attorneys' fees took place. The attitude of Moore as to what amount he was willing to award at different times is also undisputed. So we must look largely to Moore alone, in this particular case, to ascertain whether or not he was influenced by the improper discussion. What does Moore say? It is true that, in certain portions of this testimony before the court, he says he considered the legitimate evidence and the charge of the court in reaching his verdict. But, he never does. say that he did not consider the discussion about attorneys' fees also in reaching his verdict. That is very significant. On the other hand, portions of his said testimony show rather clearly that he himself thought the improper discussion in the jury room may have influenced him to a certain extent. Of course, if it influenced him at all, even though the extent be indefinite, his verdict must be set aside."

The opinion in Traction Co. v. Wilson, supra, is expressly approved by the Supreme Court, and in that case it is expressly held that if it is reasonably doubtful as to whether one juror was influenced by the improper discussion of matters not in evidence, and calculated to injure, the Supreme Court will exercise its authority and set aside the verdict.

In this case it is certainly undisputed that the matter of attorneys' fees and the setting aside of the fund was mentioned. The mentioning of such matters is, as a matter of law, calculated to injure. Ammons says that the matters were mentioned several times. The other jurors say only once. This is immaterial. The other jurors who heard the matters mentioned say they were not influenced. We are not here called upon to pass upon the question as to whether testimony to the effect that a juror is not influenced where misconduct is shown will avail to sustain the verdict. In this case, as in the Traction Co. Case, supra, it is certainly reasonably doubtful as to what the effect of the mentioning of these matters had on one of the jurors, Ammons. A careful reading of the testimony of the juror Ammons will show that he, himself, is in doubt as to what effect these matters had upon him, and if the juror is in doubt, then certainly, as a matter of law, this court is in doubt.

██ The Supreme Court, speaking directly itself and through the Commission, has, in numerous cases, laid down the rule that the. Supreme Court itself will set aside a judgment, and order a new trial, where the evi-

dence, considered as a whole, leaves it reasonably doubtful as to whether the improper conduct affected the amount of the verdict, or other vital issue of the trial, and that in passing upon this question the Supreme Court will not look to any one portion of the record, but will consider the record as a whole. Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; San Antonio Public Service Co. v. Alexander (Tex. Com. App.) 280 S. W. 753; Payne v. Harris (Tex. Com. App.) 241 S. W. 1008; Hines v. Parry (Tex. Com. App.) 238 S. W. 886; Moore v. Ivey (Tex. Com. App.) 277 S. W. 107; and Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

■ By thirteenth assignment of error the railway company complains of the action of the trial court in excluding certain evidence attempted to be brought out by the railway company on cross-examination of the witness Lindow. This witness seems to have been a boy, and his examination, out of the presence of the jury, seems to show him a boy of very dishonest character. This witness testified to facts before the jury, which, if believed by the jury, were very damaging to the railway company, in that he testified to being present when Mrs. Parry fell from the platform, or steps, of the car when she was attempting to get off. In this connection, this witness testified: "I saw the accident. A lady was getting off the train and stepped in a hole in a rubber chain (mat) on the steps as you come out of the car. The hole was in the rubber band of the first step, and was not on the platform. She stepped on the rubber band there, and, as she started to take a step her heel caught, and stayed in the hole, and she fell. I was facing her and wanted to carry her bag. She took the heel, and pushed it back in her shoe after she got up. The coach was an old coach. I am the boy at the depot who carries suitcases."

The issue as to whether there was any defect or hole in the mat or covering of the platform or step of the car in which Mrs. Parry had been riding, and from which she was disembarking at the time she was injured, was sharply drawn. The evidence for the railway company was to the effect that she had been riding in car No. 869, and that she was disembarking from this car at the time she fell, and sustained the injuries complained of. It is also shown by the evidence of the railway company that car No. 869 was practically a new car, and had no defect whatever in the covering of either the platform or the steps thereof. On cross-examination of this witness Lindow, he was asked numerous questions in regard to accusations and convictions in several cases of theft. The bills of exception in regard to these matters appear in question and answer form in the statement of facts. It is shown that the jury was retired, and that the witness

Lindow testified before the court in regard to about four thefts, all of which he practically admitted he was guilty of. It is not shown by the bill or the record that this witness was ever legally charged with or convicted of any of the offenses involved. It is shown that he was arrested and made bond in one of the cases. It is also shown in the statement of facts that the witness did testify before the jury that he had told a Mr. Campbell that he (the witness) was out on suspended sentence, and that if he was caught again he would be in trouble, and they would send him up, and the witness admitted that what he told Mr. Campbell was true.

As presented by the bill, we are not able to say that any error was committed by the trial court in regard to these matters; but, in view of the fact that this case must be reversed, we will say that the correct rule in regard to the impeachment of witnesses under circumstances such as this is laid down in the very recent case of Kennedy v. I. G. N. R. Co. (Tex. Com. App.) 1 S.W.(2d) 581. In that case Judge Nickels of Section A of the Commission discusses the different authorities, and we think correctly announces the rule.

■ The rule is that where the witness has been legally charged by indictment, complaint, or information and complaint, with an offense involving moral turpitude, and has been legally convicted of such offense in a court of competent jurisdiction, or where the witness has been so legally charged with such offense, and presently admits his guilt, then such matters are admissible in evidence touching his credibility as a witness. Kennedy v. I. G. N. R. Co. (Tex. Com. App.) 1 S.W.(2d) 581. Otherwise, in the impeachment of a witness, the inquiry should be confined to his general reputation for truth and veracity, and should not be extended to his general moral character. M. K. & T. R. Co. v. Creason, 101 Tex. 335, 107 S. W. 527, and authorities there cited. In this connection, we would suggest that when matters of this character arise it is proper to withdraw the jury and ascertain the admissibility of the evidence out of the presence or hearing of the jury.

The other assignments present matters which, in our opinion, were correctly decided by the Court of Civil Appeals, and no good purpose would be served by again discussing these matters here.

We recommend that the judgments of the Court of Civil Appeals, and of the district court, be reversed, and that the cause be remanded to the district court for a new trial.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.