SMITH et al. v. WHITE et al.

No. 12027.

Court of Civil Appeals of Texas. Galveston.

Dec. 9, 1948.

Rehearing Denied Jan. 13, 1949.

Larry W. Morris, of Houston, for appellant Ella White.

Hamblen, Bobbitt & Hamblen and W. P. Hamblen, all of Houston, for other appellants.

C. B. Cain, of Liberty, and Butler, Binion, Rice & Cook, of Houston (Wm. C. Perry, Jr., Malcom R. Wilkey and Jack Binion, all of Houston, of counsel), for appellees.

MONTEITH, Chief Justice.

This action was brought by Robert White, Milton White, Furl White and their mother, Renie Lewis White for the recovery from appellants, H. Robert Smith, et al., of a part of the estate of Mayes White, deceased, the alleged common-law husband of Renie Lewis White and the father of Robert, Milton and Furl White.

Appellants denied in their pleadings that there had been a common-law marriage between Mayes White and Renie Lewis White or that Robert, Milton and Furl White were the lawful children of Mayes White.

By stipulation of the parties it was agreed that the suit should involve only the issue of whether or not there had been a common-law marriage between Renie Lewis White and Mayes White during his lifetime and whether appellees Robert, Milton and Furl White were entitled to his estate or any part thereof.

A jury found, in answer to special issues submitted, that Mayes White and Renie Branch Lewis had entered into a mutual agreement to become husband and wife by a common-law marriage; that in pursuance of this agreement they had lived and co-habited together as husband and wife and had openly and professedly held themselves out to the public as husband and wife, and that both Mayes White and Renie Lewis were unmarried at the time this agreement was entered into.

Judgment was rendered in accordance with the jury's verdict that Renie Lewis White was the lawful wife of Mayes White, deceased, and that their marriage had never been dissolved or annuled and had continued until his death. The court found in the judgment rendered that Robert, Milton and Furl White were the legitimate and sole surviving children of Mayes White deceased and that they were the owners of and entitled to recover one-half of the community property accumulated by Mayes White and Renie Lewis White during their marriage prior to July 9, 1924, and one-fourth of the property jointly owned and held by Mayes White and Ella Robey White from July 9, 1924, to and including January 28, 1946, and that there was no necessity of the administration of Mayes White's estate.

Appellants, under appropriate points of error, contend that the judgment of the trial court in awarding appellees title to the land in controversy was so against the weight and preponderance of the evidence as to amount to an abuse of discretion. They complain of the action of the court in refusing to admit in evidence a judgment of the County Court of Chambers County as evidence to the fact that Mayes White and Renie Lewis White were charged with fornication in connection with their cohabitation.

The record reflects that in the year 1913, Mayes White moved from his mother's home into the home of Renie Lewis White, it is undisputed that no marriage ceremony was ever performed between them, and that they lived together continuously until 1922, when Mayes White left her and entered into a ceremonial marriage with appellant, Ella Robey White. During that time appellees Robert, Milton and Furl White were born to Renie Lewis White. During that time he provided food and clothing for the household and referred to her as his wife and the mother of his children. As evidence of the fact that they held themselves out to the public as man and wife, appellees introduced in evidence the birth certificate of the oldest boy, Robert Roy White, in which Mayes White is listed as the boy's father and the mother's

maiden name is listed as Renie Lewis. The blank in the certificate as to the legitimacy of the child is answered "yes". Robert and Mayes White, Jr. were christened and enrolled in the Methodist Church. The baptismal record of Furl White shows Mayes White as his father and Renie Lewis as his mother.

On the issue of holding out to the public, Dr. Morgan, a witness for appellees, testified that Mayes White and Renie White went to him for treatment in order that she might bear children.

■ The courts of this state have uniformly held that to constitute a common-law marriage, there must be an agreement to become husband and wife, a living together as such and a holding out of each other to the public as husband and wife. Such agreement may be express or implied. Cuneo v. De Cuneo, 24 Tex.Civ.App. 436, 59 S.W. 284, 285; Berger v. Kirby, 105 Tex. 611, 153 S.W. 1130, 51 L.R.A.,N. S., 182; Texas Employers' Insurance Association v. Soto, Tex.Civ.App., 294 S.W. 639, 640; 38 C.J. 1317 et seq.; 55 C.J.S., Marriage, § 18.

In the case of Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W.2d 229, 230, it was held that an agreement to live as man and wife will be implied where the circumstances of co-habitation and holding out as husband and wife warranted. The Commission of Appeals in upholding the right of the plaintiff in the suit to recover for the death of her alleged common-law husband said "Proof that a couple live together under the same name, introducing each other as husband and wife, respectively, recognizing their children, and the many other respects tending to show their marital status, is sufficient to prove a marriage. It is not necessary in addition to offer evidence of the statutory celebration, or of the actual agreement of the parties to be husband and wife. These essential facts are embraced in the marriage which is thus proved by circumstances."

In the case of Baker v. Mays & Mays, Tex.Civ.App., 199 S.W.2d 279, it was held that, in the absence of an express agreement, proof that the parties lived together under the same name, introduced each other as husband and wife, respectively, and otherwise conducted themselves as husband and wife until death of the male member of the union was sufficient to establish a common-law marriage.

In the case of Martinez v. Martinez, Tex. Civ.App., 6 S.W.2d 408, in which the facts are similar in many material respects to those in the instant case, the two parties lived together continuously for 12 years at which time appellant left appellee and entered into a ceremonial marriage with another Mexican woman. No evidence was offered as to any prior agreement between the parties to become husband and wife, except the testimony of the parties themselves, which was in direct conflict. The jury found all of the elements of a common-law marriage and the appellate court sustained this holding on the basis that the circumstances indicated an agreement to become husband and wife and the fact that their co-habitation during the 12 years was "faithful, exclusive and harmonious".

In the case of Hill v. Smith, Tex.Civ. App., 181 S.W.2d 1015, it was held that in this state no particular character of evidence of marriage is required by statutes and that a common-law marriage is good where there is evidence of an agreement between a man and a woman, both competent to marry, who are actually living together, as such in pursuance of an agreement to become husband and wife and holding out with each other to the public as husband and wife, and that such marital relation, as any other fact issue, may be proven by circumstantial evidence. The court held that the acts, statements and conduct of the parties—such things being merely circumstances—may raise the issue of marriage, and are pertinent evidence from which a jury may reasonably infer that such a contract existed.

■ In the instant case the facts that the parties openly co-habited as husband and wife, that they recognized and treated each other as such and were conceded to be the parents of the appellees, Robert, Milton and Furl White, we think, under the above authorities, raised the issue of common-law marriage and justified the finding by the jury that at the commencement of the co-

habitation the parties actually agreed to enter into an agreement to become husband and wife. While these facts are not conclusive, they justify, we think, a finding on this issue by the jury when given the benefit of all reasonable inferences and intendment.

The courts of this state have uniformly held that "The Court of Civil Appeals cannot substitute its findings for findings of the trial court, if there is any evidence in the record to sustain the trial court's findings". Liedeker et al. v. Grossman et al., Tex.Sup., 206 S.W.2d 232, 234, 235; First State Bank of Temple, v. Metropolitan Casualty Insurance Co. of New York, 125 Tex. 113, 79 S.W.2d 835, 98 A. L.R. 1256; National Bond and Mortgage Corporation v. Davis, Tex.Com.App., 60 S. W.2d 429; Galveston, H. & S. R. Co. v. American Grocery Co., 122 Tex. 1, 36 S.W. 2d 985.

Under her fourth point of error, appellant Ella White assigns error of the trial court in refusing to admit in evidence judgments of the county court of Chambers County offered by appellants showing the filing of charges of fornication against both Mayes White and Renie Lewis White during the time they were admittedly living together.

The record reflects that former District Clerk of Chambers County while testifying from Grand Jury records of May 13, 1917, stated that the records reflected that the grand jury returned a "no bill" against Mayes White. In connection with his testimony, he stated that he had had a conversation with Mayes White and that Mayes had told him that he had not been living with Renie White in adultery, but that he had been living with her as his wife. The record as tendered does not show what offense Mayes White plead guilty to or what offense against Renie Lewis was dismissed. The only testimony which could connect Mayes White, deceased, with being the person mentioned in appellants' exhibit was the testimony of the witness who stated that a charge of fornication was filed against Mayes White, but that White told him he had not been living in adultery but that he had been living with Renie Lewis as his wife.

The general rule with regard to the admissibility of a judgment of conviction in a criminal prosecution is stated in 31 A.L.R. 262, in which it is said that "the rule supported by the great weight of authority is to the effect that a judgment of conviction or acquittal rendered in a criminal prosecution cannot be given in evidence in a purely civil action to establish the truth of facts on which it was rendered".

This rule is supported by the case of Stewart v. Profit, Tex.Civ.App., 146 S.W. 563, 564, in which this court, in affirming the action of a trial court, said "The trial court did not err in excluding, upon appellees' objection, the indictment and proceeding showing the conviction of Katie Bell in 1893, on the charge of marriage with Calvin Bell, a negro, she being a white woman".

In the case of Arnold v. State, 148 Tex. Civ.R. 310, 186 S.W.2d 995, 997, 158 A.L. R. 1356, it is said "It has been a consistent rule in this State that the judgment of a civil court is not binding upon a criminal court, and vice versa. The judgment finally rendered in the civil action would not be evidence in the trial of this case".

We think the judgments in question were also inadmissible in the form in which they were offered because they did not themselves specify the offense charged nor did they specify the parties involved in the offense.

Since these conclusions determine the merits of this appeal, the judgment of the trial court must be in all things affirmed.

Affirmed.