BREWSTER E. DILLARD V. STATE.

No. 24293. March 16, 1949.

*Vickers & Vickers,* and *Burks & McNeil,* Lubbock, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

The offense is murder; the punishment, five years in the penitentiary.

Weaver (deceased) and Tice were partners in the operation of a filling station in Lubbock. About ten o'clock at night, appellant went to the station and soon thereafter he and Tice began gambling in a game of matching coins. Appellant lost all of his money. He pawned to deceased certain personal effects for a loan; this he lost also. He then left the station to go to his mother's for more money, asking Tice to wait at the station until his return. When he went back, Tice was gone. Appellant and deceased then began matching coins. Appellant, claiming that deceased was cheating in the game, snatched up a check and a twenty-dollar bill and ran to his car, which was parked in the station driveway. He got into the car and was attempting to turn on the ignition when deceased grabbed him and started pulling him from the car. Appellant got a pistol from the glove compartment of the car. In the struggle, the gun fired, killing deceased. The bullet entered in the vicinity of the left breast.

Other than the appellant, there were no witnesses to the killing.

To combat the theory of accident and self-defense, as relied upon by appellant, the state showed that appellant, in calling for, ambulance service and reporting to the officers as well as those arriving at the scene of the shooting immediately thereafter, claimed that deceased had fainted. He made no report at that time of the fact that deceased had been shot. One of the officers who answered the call asked appellant where the gun was with which he shot the man—to which appellant replied, "I can't answer that but if I was an officer, I would look in the front seat of my car." The officer immediately looked there, and found a pistol.

Appellant testified that he laid the pistol in the seat of his car after the shooting.

It is apparent that deceased was killed by a shot from a pistol in the hands of the appellant.

It was the province of the jury to accept or reject the defensive testimony.

Under the facts stated, we conclude that the testimony is sufficient to support the verdict and that the trial court did not err in refusing to charge upon circumstantial evidence.

Two bills of exception are before us. These should be considered together and in relation one to the other.

By Bill No. 1, it is shown that the state, to discredit the testimony of appellant before the jury, asked him upon cross-examination if he had not been tried and convicted in Los Angeles, California, for "suspicion of rape." Objection was registered that the record would be the best evidence. Whereupon, the trial court ruled that appellant would answer if he knew of such conviction. Appellant then replied that he did not know that he had been so convicted. He was then asked if he had not served "a term in the county jail." Appellant's objection to that question was sustained, and the jury were instructed not to consider the question for any purpose. Appellant was then asked whether, as a matter of fact in 1939, he pleaded guilty to a charge of suspicion of rape in Los Angeles, California—to which he replied that he had not. When appellant's counsel arose to register his objection to such question and answer, the trial court instructed the jury not to consider the same for any purpose. Appellant insists that reversible error was reflected in the action of state's counsel in propounding the questions men-

tioned, notwithstanding their withdrawal from the jury's consideration.

By Bill No. 2 it appears that, following the incident just mentioned, appellant was asked if in 1936 he had not been convicted of a violation of the Dyer Act—that is, transporting a stolen automobile across the state line. Appellant replied that he was convicted of said offense and was released from such conviction in 1938. To this testimony appellant registered the objection that it was too remote and was, therefore, inadmissible. The objection was overruled.

In submitting the case, the jury were instructed to the effect that such testimony could be considered by them only as affecting the credibility of the appellant as a witness in his own behalf, if it did so.

Appellant insists that the testimony was inadmissible for any purpose.

Proof of the fact that a witness or the accused, when testifying in his own behalf, has been convicted of a felony or a misdemeanor involving moral turpitude may be received as affecting the credibility of the witness, when it is not too remote. The time element of the question of remoteness starts from the time of the release under conviction rather than the time of the conviction. Toms v. State, 200 S. W. (2d) 174.

As appellant was released in 1938 and called to testify in 1948, the length of time here involved is ten years.

Appellant, in his brief as well as in oral presentation, correctly recognizes the rule to be that the question of remoteness is one addressed largely to the discretion of the trial court and that no hard and fast rule or period of time may be fixed. 45 Tex. Jur., Witnesses, Secs. 255 and 318.

Expressions contained in earlier opinions may have left the impression that a lapse of ten years between the release from custody and the giving of the testimony renders the testimony of prior convictions remote. Such, however, is not the correct rule, for, regardless of the time element, the facts of each case must be looked to and considered in determining the question of remoteness.

In the light of such rule, then, the age of the accused, his conduct as reflecting non-reformation on his part, the nature

of the accusation and attendant facts for which he is upon trial, and the length and severity of the penalty inflicted are to be considered.

Here, appellant, thirty-seven years of age and married, late at night is engaged in gambling for sizeable sums, pawning his personal effects to continue that gambling. After losing his money, he goes in search of more, returns and continues to gamble. A dispute arises out of the game, as a result of which the accusation of murder, for which he stands convicted, arose.

Except as may be reflected by such testimony and the questions propounded as to the charge of "suspicion of rape," as mentioned in Bill of Exception No. 1, there is no testimony of non-reformation on the part of appellant since his release, or that he has been subsequently charged with other felonies.

In Lott v. State, 123 Tex. Cr. R. 591, 60 S. W. (2d) 223, attention was called to the fact that a difference exists in receiving in evidence impeaching testimony by proof of prior convictions against the accused and that of a mere witness in the case. The difference is not so much the admissibility of the testimony as it is error in the receipt thereof, which is much more serious when it relates to the accused than when it affects one who was a mere witness in the case.

In the light of the case as a whole, we are constrained to agree with the appellant that the impeaching testimony should not have been admitted. In support of this conclusion, see Lott v. State, supra; Latta v. State, 124 Tex. Cr. R. 618, 64 S. W. (2d) 968, and Perez v. State, 141 Tex. Cr. R. 575, 150 S. W. (2d) 402.

If any doubt existed as to the correctness of this conclusion, such is dispelled when we look to and consider, in connection therewith, the events depicted in Bill of Exception No. 1.

The record does not reflect that any offense is known to the laws of the State of California as "suspicion of rape." Under the presumption that the laws of the State of California are the same as those of this state, until the contrary is shown, we know that there is no such offense. It is hard to conceive that any person could be convicted upon suspicion of having committed an offense. Such being true, the conduct of state's counsel in propounding to appellant the questions set out in Bill of Exception No. 1 must be viewed by us as having been deliberate,

without any belief by him that the appellant had been, in fact, so convicted.

Here, appellant's defense depended alone upon his unsupported testimony. No witness directly contradicted him. The jury did not believe his testimony, yet, in finding appellant guilty of a malicious murder, they assessed a penalty of only five years in the penitentiary.

We cannot say that the facts reflected in Bills of Exception Nos. 1 and 2 did not enter into the jury's verdict.

In framing a charge submitting the question of reasonable doubt as between murder with and without malice, care should be exercised in order that the accused may not be cast under the burden of establishing such doubt. We are not suggesting that the instant charge was error in this particular, but make the suggestion, in view of another trial, in order that the question may not arise.

Other matters presented will hardly arise upon another trial and are therefore not discussed.

For the error mentioned, the judgment is reversed and the cause remanded.

Opinion approved by the Court.