Homer B. ADAMS, Appellant,

v.

STATE BOARD OF INSURANCE et al.,
Appellees.

No. 13278.

Court of Civil Appeals of Texas.

Houston.

Oct. 30, 1958.

Rehearing Denied Nov. 20, 1958.

Second Motion for Rehearing Overruled
Jan. 8, 1959.

Jim S. Phelps, Houston, Blakeley & Williams, Carey Williams, Houston, of counsel, for appellant.

Will Wilson, Atty. Gen., Wallace P. Finfrock, R. V. Loftin, Jr., Asst. Attys. Gen., for appellee.

WERLEIN, Justice.

This suit was brought by Homer B. Adams, appellant, against The Life Insurance Commissioner of Texas, John Osorio, and the Board of Insurance Commissioners of the State of Texas, John Osorio, Chairman, Mark Wentz and Morris Brownlee, members, as an appeal from an order of appellee Board of Insurance Commissioners of the State of Texas, dated March 13, 1957, denying appellant a license to act as a life insurance counselor, under the provisions of Article 21.07–2, Texas Insurance Code, 1955, V.A.T.S., and also as provided for in Sec. 13 of Article 21.07–1 thereof.

Appellant prayed that the court set aside said order and enter an order granting him such license, and directing the appellees to prepare and mail to him the proper identification card showing that he was duly licensed as a life insurance counselor. On the verdict of the jury, the trial court entered judgment denying all relief sought by appellant.

Appellant's First Point of Error is that the trial court erred in allowing appellees to introduce evidence over his objections that he had been tried and convicted of a crime. The court permitted appellees, over the objection of appellant, to ask:

> "Mr. Adams, on or about the first part of March of 1949, were you not tried and convicted by a jury in the Criminal District Court of Bexar County, Texas, for theft of over $50.-00, and did not the jury return a verdict of guilty therein?"

Appellees were further permitted to show that as a result of such conviction appellant served a penitentiary sentence.

Appellant contends that the conviction should have been excluded because it was too remote and also because it was introduced in evidence as proof of the facts upon which it was based, and to show that appellant was a thief and a man of bad character.

The admissibility of a conviction with regard to its remoteness is a matter which rests within the sound discretion of the trial court. 45 Tex.Jur. 234, Sec. 317; Carr v. De Witt, Tex.Civ.App., 171 S.W.2d 388, ref. want merit; York v. Glenn, Tex. Civ.App., 242 S.W.2d 653, no writ history; Bunch v. Texas Employers' Ins. Ass'n, Tex. Civ.App., 209 S.W.2d 657, no writ history; Dillard v. State, Tex.Cr.App., 218 S.W.2d 476; Shipp v. State, 104 Tex.Cr.R. 185, 283 S.W. 520.

Appellant was indicted in May of 1946, for an offense committed on March 25, 1946, but he was not tried and convicted

until March 1, 1949, with the final conviction in 1950. It is appellant's contention that the time of the commission of the crime rather than the date of conviction or the date of release from the penitentiary, should be considered in determining whether the conviction was too remote. The trial of the present case was in April of 1957. In most criminal cases in Texas the date considered by the court in determining remoteness is the date of the convicted party's release from the penitentiary. Dillard v. State, Tex.Cr.App., 218 S.W.2d 476; Toms v. State, 150 Tex.Cr.R. 264, 200 S.W.2d 174; Couch v. State, 158 Tex. Cr.R. 292, 255 S.W.2d 223.

In the case of Carr v. De Witt, Tex.Civ. App., 171 S.W.2d 388, 390, the court stated:

"Some authorities hold that ten or more years subsequent to a conviction is sufficient time to make the question too remote. 45 Tex.Jur. 111, 112, par. 250, and Linz v. Skinner, 11 Tex.Civ. App. 512, 32 S.W. 915."

■ In the case of Bernard's, Inc., v. Austin, 300 S.W. 256, writ refused, the Dallas Court of Civil Appeals held that the time of confinement in the penitentiary could be taken into account as a portion of the period of time required to create the presumption of reformation on which rests the rule of evidence known as the "doctrine of remoteness." We have not found, nor have we been cited to, any Texas case which holds that the date from which the computation is made should be that of the date of the commission of the offense rather than the date of the conviction or date of release from the penitentiary. The authorities usually refer to the date of conviction in civil cases in determining the question of remoteness. We are of the opinion that the conviction of appellant was not too remote and that in any event the trial court did not abuse its discretion in admitting evidence of such conviction.

Appellant cites numerous authorities which hold that a conviction for a crime can not be introduced for the purpose of establishing facts upon which a subsequent civil suit is based. Illustrative of the authorities cited by appellant is the case of Smith v. White, Tex.Civ.App., 216 S. W.2d 672, 675, writ ref., n. r. e., in which this Court, through Chief Justice Monteith, stated:

"The general rule with regard to the admissibility of a judgment of conviction in a criminal prosecution is stated in 31 A.L.R. 262, in which it is said that 'the rule supported by the great weight of authority is to the effect that a judgment of conviction or acquittal rendered in a criminal prosecution cannot be given in evidence in a purely civil action *to establish the truth of facts on which it was rendered*'." (Emphasis supplied)

■ In those cases character as such was not in issue. In the instant case the character of appellant was placed in issue. Testimony had been introduced to show appellant's good character, reputation and trustworthiness. Appellees had the right to rebut such testimony. It is well recognized that in civil as well as criminal cases a prior conviction of a crime involving moral turpitude is admissible to impeach a witness whose character for truth and veracity is in issue. See Kennedy v. International Great Northern Ry. Co., Tex. Com.App., 1 S.W.2d 581; Texas & N. O. R. Co. v. Parry, Tex.Com.App., 12 S.W. 2d 997; Texas Employers' Ins. Ass'n v. Curry, Tex.Civ.App., 290 S.W.2d 767, error ref., n. r. e. There seems to be no valid reason why the character of a party to a suit who is testifying cannot be attacked when his character is in issue by introduction of a judgment of conviction for a felony involving moral turpitude in the same manner as a witness's character for truth and veracity may be impeached. While it is true that appellant did not take the witness stand until called by appellees, nevertheless he was a witness and in addition to that his character had been placed

in evidence by him through the testimony of other witnesses prior to the introduction of the evidence of the conviction. In Lasater v. State, 88 Tex.Cr.R. 452, 227 S.W. 949, involving a case in which the appellant had put in issue his reputation both for truth and veracity and as being a peaceful, law-abiding citizen, the court stated: "Proof that one has been convicted of a felony is admissible when the character of such person has become a legitimate issue."

Appellant is seeking a license from an agency of the State of Texas. Thus the parties in the present suit and in the criminal prosecution are in effect identical. Article 21.07–1, Sec. 12(a), authorizes the denial of a license to a person who is not of good character (Subsec. 10) or who has demonstrated a lack of trustworthiness (Subsec. 5). Appellant testified that as an insurance counselor he was responsible to the purchaser, that he sells his services to the purchaser in exactly the same way as a lawyer sells his services; that the purchaser must be able to rely upon and place complete trust in the counselor and that such relationship is fiduciary and if the counselor is dishonest he can take advantage of his client.

■ It is our opinion that anything reasonably bearing upon appellant's character and trustworthiness was admissible since his character was a primary issue in the case. The conviction, though not conclusive, was a circumstance which the jury had a right to consider in connection with other testimony. There is a close analogy between this case and disbarment proceedings in which courts have held that prior convictions may be considered as evidence of character in determining whether a lawyer should be licensed or permitted to retain a license once obtained from the court. See People ex rel. Hirschi v. Payson, 1905, 215 Ill. 476, 74 N.E. 383; State ex rel. Sorenson v. Scoville, 1932, 123 Neb. 457, 243 N.W. 269.

Appellant's Point of Error No. Two is to the effect that the court erred in admit-

ting into evidence three judgments taken against appellant. Appellant's running objection to the introduction of testimony relative to his conviction did not extend to the civil judgments later introduced. The judgment in favor of Halliburton Oil Cementing Company (Exhibit 44), was objected to only on the ground that it was irrelevant and immaterial. It was, however, material and relevant in connection with establishing appellant's character and financial responsibility.

■ The second judgment (Exhibit 45) was taken by one Roy B. Smith against one Homer B. Adams in 1947 in Dallas County for the sum of $128.50. Appellant didn't remember such judgment, but supposed it was in connection with the failure of his business. Appellant objected to the introduction of the judgment if it was offered for the truth of the matters contained therein, which objection was overruled. The evidence raised the inference that appellant was the defendant in such judgment. The law is well settled that "A judicial record is always admissible to prove the fact that a judgment has been rendered, the time of its rendition and the terms and effect of the judgment * * * the record may not be introduced to establish the facts on which a judgment was based." 32 C.J. S. Evidence § 636, pages 488–489.

■■ No objection was made upon the introduction of the judgment in favor of Great Southern Life Insurance Company in the sum of $1,988.27 taken in the 30's sometime. Appellant also testified without objection that four or five judgments had been taken against him. We are of the opinion that the trial court did not err in connection with the admission of said judgments, and that in any event it cannot be said that error, if any, was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Appellant's Third, Fourth and Fifth Points of Error are to the effect that the

court erred in submitting Issues 1 to 8, inclusive, because of insufficient evidence to support the jury's Findings and because the negative answers of the jury are against the great weight and preponderance of the evidence. The jury in substance found that appellant (1) was not a person sufficiently trustworthy to be licensed as a life insurance counselor in the State of Texas, (2) was competent to be licensed, (3) was not a person of good reputation, (4) was not a person of good character, (5) had wilfully violated the insurance laws of Texas, (6) had been guilty of fraudulent or dishonest practices, (7) had materially misrepresented the terms and conditions of life insurance policies or contracts, and (8) had made or caused to be made or issued statements misrepresenting or making incomplete comparisons regarding life insurance contracts.

In order to determine whether or not these findings are sufficiently supported by the evidence, or are against the great weight and preponderance of the evidence, it is necessary to review briefly the testimony adduced at the trial.

Appellant testified as to the fiduciary relation between a counselor and his client and the importance of a counselor being entirely disinterested and trustworthy. He had filed a prior application for a counselor's license, which was denied on October 19, 1955. Previously his life insurance agent's license had been cancelled. From the time of the cancellation of his license to the effective date of the Insurance Counselor's Licensing Act on September 6, 1955, appellant had been acting as an independent life insurance counselor, except for the time spent in the penitentiary. After his release from the penitentiary, appellant came to Houston and in March, 1952, married Mrs. June Lee Knight. In the early part of 1952 Mrs. Knight obtained a life insurance agent's license and did business under the name of J. L. Knight. After her marriage she continued to hold her insurance agent's license until April, 1955. During that time she transacted business as an agent for Sam Houston Life Insurance Company (among others), where her commission account was carried as "June Lee Knight." It seems that on many of the applications for life insurance with the Sam Houston Life Insurance Company, from which she received commissions, she signed her own name. On at least two of such applications the name "J. L. Knight" was signed by her husband, Homer B. Adams, who had no agent's license.

On one Ledwig's application the name of J. L. Knight as agent was written by appellant. Ledwig testified he did not know the name of the company until he signed the application, and that he had never talked with J. L. Knight and that she had not seen him prior to the time of the application. Ledwig testified that at his first conference the premiums on his policy for future years were not discussed except for the first four or five years, and that although he asked about them appellant evaded the question and misrepresented the policy in Sam Houston Life Insurance Company solicited by him by saying that the premium rates would be around $7 per year per thousand with only a slight increase in the premium cost, whereas toward the end of the policy term the premiums would run approximately $100 per year per thousand, the average being higher than 20-Pay Life.

Prior to the Life Insurance Counselor's Licensing Act of September 6, 1955, appellant usually based his fee upon 10% of the cash value recovered, exclusive of dividends, on the policies cashed in as a result of his counseling. After the Act became effective, he advised one Copeland that he did not have a counselor's license and it would be necessary for him to give Copeland his "advice and information and everything relative to" his policies free of charge and that if Copeland hired him to do "secretarial and administerial acts relative to handling" the conversion of his insurance policies the cost of employment would be agreed upon at that time. Appellant testified that he was not paid for

counseling services but for laying before Copeland all the information available on the various policies and companies that offered them so that Copeland could make a selection based on the information furnished by appellant, including the company that offered the most liberal policy; recommending an agent; writing letters to insurance companies to secure cash surrender · values; and checking statements of accounts issued by insurance companies. Copeland testified that the fee paid appellant was for his services in connection with the recovery of the cash surrender values, including an examination of the policies. He referred to the services of appellant as "the package deal" and stated, "You would have to tie the whole program together." There were other cases of similar import, including that of Dr. Henry G. Grady, from whom appellant received a fee of approximately $500.

It seems that after the effective date of the Insurance Counselor's Licensing Act, appellant changed his original method of contracting for a fee in advance for his counseling and advice, and instead gave counsel and advice free of charge and then contracted to do the "secretarial and administerial work" for a fee. This was done on his lawyer's advice and was designed to comply with the section of the Act prohibiting the collection of a fee for counseling and advising and the giving of information and suggestions without a license. The jury might well have concluded it was a subterfuge.

Appellant admitted that since the effective date of the Act he had transmitted on behalf of his counseling clients applications for policies of life insurance. He charged what was termed a "finder's fee" for his services in sending one Boyles clients for insurance. The finder's fee was based upon the relative amount of business that the client brought in. Boyles testified that he had paid finder's fees to Adams since 1955, the effective date of the Insurance Counselor's Licensing Act, amounting roughly to $1,000. He further stated that people had applied to his agency as a result of Adams' counseling.

Barry Rose, owner of an insurance agency, testified that the giving of a finder's fee by an agent of an insurance company to a person who is not a duly licensed agent for referring business to him is called "fee splitting or rebating," and that it has always been considered unethical. He further testified that he attended a conference that Adams had set up for the purpose of discussing a Dr. Thorning's policies. He testified that appellant stated that Thorning could not get as much money out of his policy as he put in it, which was a definite misstatement made in the witness's presence. He testified that while this was the only definite misstatement made in his presence, in general the inferences that are drawn and the methods appellant uses are not such as lead to the whole truth. He testified that the statement made by appellant was a false statement.

There was direct testimony concerning appellant's reputation and character. W. W. Reader testified that he had discussed Mr. Adams' reputation with insurance people from time to time, and that his reputation in insurance circles was bad. Dr. Hofer, one of appellant's counseling clients, testified that he knows that appellant had been called "a rogue, a hood, a mobster and a crook" and that among the people that had talked with him in his office were insurance agents and underwriters, and on the basis of their remarks appellant "should have long since been hanged."

Witness Barry Rose testified that appellant's reputation on or about March 13, 1957, as a law abiding citizen and for truth and veracity was bad. He further testified that appellant's reputation with respect to ethical or nonethical conduct in business about that time was that he was unethical.

■ The jury were well warranted in finding that the appellant had violated the insurance laws of Texas by soliciting or

receiving applications for insurance without a license in violation of Art. 21.01 of the Insurance Code. Although appellant testified that he did not charge a fee for counseling after the Counselor's Licensing Act became effective, he did charge a fee for so-called "secretarial and administerial" work in connection with the cashing in of existing policies and the writing of new term policies in other companies. In order to determine whether or not a client's policies should be cancelled out and a new term policy written, it was necessary for appellant to examine such policies and make his recommendations in regard thereto, as in the case of Hofer, who testified that the analysis of his policy was included within the fee paid to appellant. Moreover, we think appellant wilfully violated the Insurance Code in accepting finder's fees. Article 21.07–1, Sec. 3(b), which became effective in 1955, prohibits any person other than a life insurance agent from accepting any portion of an agent's commission.

We have concluded that there was evidence of probative force supporting the Findings of the jury to the Issues submitted, and that such findings are not against the great weight and preponderance of the evidence although the majority of the witnesses testified appellant's character and reputation were good. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. The great weight and preponderance of the testimony is not determined by the number of witnesses tendered. The trier of the facts has the right to take into consideration the demeanor of the witnesses and to determine the credibility of each witness under all the facts and circumstances. Gulf, C. & S. F. Ry. Co. v. Deen, Tex.Sup., 312 S.W.2d 933, and Sinclair v. Brownlee, Tex.Civ.App., 300 S.W.2d 103, error ref., n. r. e.

We find no merit in appellant's Point of Error No. 6 with respect to the Court's sustaining of appellees' objections to the admissibility of certain of appellant's requests for admissions. The requested admissions were immaterial and irrelevant or based upon hearsay or res inter alios acta.

Appellant's Point of Error No. 7 is to the effect that the court erred in refusing to submit to the jury appellant's requested Issues and Instructions. There was no assignment of error in the motion for new trial regarding the instructions refused by the trial court. The point cannot be raised, therefore, at this time. Pozos v. Rivero, Tex.Civ.App., 225 S.W.2d 1017, no writ history; Field v. Sosby, Tex. Civ.App., 226 S.W.2d 484, error refused; Rule 374, T.R.C.P. Any error with respect to refusal of the court to give appellant's requested Special Issues was likewise waived by reason of the generality of the terms in which couched, in violation of Rules 320, 321 and 322, T.R.C.P. Points not briefed in the Court of Civil Appeals will be considered as waived. Blum v. Whitworth, 66 Tex. 350, 1 S.W. 108; Brazos River Conservation & Reclamation Dist. v. Harmon, Tex.Civ.App., 178 S.W. 2d 281, ref., w. o. m.

Appellant's Point of Error No. 8 complains that the trial court, in submitting to the jury Special Issues Nos. 1 to 8, inclusive, misplaced the burden of proof. Appellant concedes, however, that the court properly placed the burden of proof on appellant as to Special Issues Nos. 1 and 2. Special Issue No. 1 inquired as to whether the appellant was a person sufficiently trustworthy to be licensed as a life insurance counselor in the State of Texas. It inquires as to an ultimate fact, which in itself would probably be sufficient to sustain the judgment of the court. Appellant did not object to any of the Issues except Special Issues Nos. 3, 7 and 8 on the ground that the burden of proof was erroneously placed upon appellant. Therefore, appellant cannot now complain as to the placing of the burden of proof upon appellant as to the other Issues. In response to Special Issues Nos. 4, 5 and 6, the jury found that appellant was not a person of good character, had wilfully violated the provisions

of the insurance laws of the State of Texas, and had been guilty of fraudulent or dishonest practices. These findings alone amply support the judgment of the court, even though we disregard completely Issues Nos. 3, 7 and 8, to which the appellant objected in connection with the placing of the burden of proof. Rule 272, T.R.C.P.

Further, Subsec. (c) of Sec. 12 of Article 21.07–1 clearly indicates that the burden of proof is on an applicant whose previous application has been denied, to show good cause "why the denial, refusal or revocation of his license shall not be deemed a bar to the issuance of a new license." Since appellant's prior application was denied and he had the burden of showing good cause, it might well follow that he would have the burden of proof on the entire case. We find it unnecessary, however, to pass upon appellees' contention that the order of an administrative body is presumptively valid and that the burden of persuasion is upon the person who endeavors to set it aside.

 Appellant's last Point of Error, No. 9, complains that the trial court erred in refusing to enter a default judgment against the Life Insurance Commissioner of the State of Texas, who was served with citation but failed to file an answer. There is no merit in this Point. Article 1.02 of the Insurance Code (1955) provides that "all the powers, duties and prerogatives heretofore vested in and devolving upon the Life Insurance Commissioner * * * shall hereafter be vested in and be had, enjoyed and exercised by the Board of Insurance Commissioners as created by this Act." If an answer could have been filed on behalf of the non-existent Life Insurance Commissioner, the answer filed on behalf of the entire Board of Insurance Commissioners would suffice, since he was a member of the Board.

The judgment of the trial court is affirmed, Chief Justice BELL not sitting.

On Appellant's Motion for Rehearing

WERLEIN, Justice.

Appellant asserts that we erred in saying in our opinion that the appellant stated that Dr. Thorning could not get as much money out of his policy as he put in it. It is true that witness Rose testified that at the conference set up, appellant "permitted the statement to be made by the C.P.A. he brought with him." Following such statement, however, there is testimony from which one might conclude, as we did, that appellant also made the same statement. In any event the statement made by the C.P.A. brought by appellant to the conference to discuss the policy, was in effect adopted by appellant so that the result is the same insofar as the case is concerned.

Appellant's motion for rehearing is overruled, Chief Justice BELL not sitting.