The **TRAVELERS INSURANCE COM-PANY, Appellant,**

v.

**Delories Williams BUFFINGTON, Appellee.**

**No. 4030.**

Court of Civil Appeals of Texas.

Eastland.

March 11, 1966.

Rehearing Denied April 1, 1966.

Kerr, Fitz-Gerald & Kerr, Midland, for appellant.

Selwyn S. Webber, W. R. Barnes, Odessa, for appellee.

COLLINGS, Justice.

This is a workmen's compensation case. The trial was before a jury and based upon its findings, judgment was rendered for the plaintiff, Delories Williams Buffington, for total and permanent incapacity. Travelers Insurance Company has appealed.

In appellant's first three points it is contended that the court erred in instructing counsel for appellant not to make any statements or to interrogate any witness relative to the conviction of appellee's expert witness, Dr. Joe Boyd, for practicing medicine without a license, and in refusing to admit the testimony of Dr. Boyd on cross-examination relating to several arrests and his conviction for the illegal practice of medicine.

The evidence indicates that appellee Delories Williams Buffington fell and sustained an injury while she was working as a car-hop in Big Spring, Texas, on the evening of March 18, 1963. Two days after her injury she left her employment and moved to Odessa where a few days later she went to Dr. Joe Boyd, a chiropractor in that city, for treatment. She continued under his care, seeing him about three times a week, from then until the time of the trial except for a period of about six months when she was married to her second husband Lee Buffington and lived in Kermit. Appellee stated that during the time she was in Kermit she was unable to see Dr. Boyd regularly or very often. The evidence shows that Dr. Boyd is and at all relevant times was a chiropractor practicing his profession in Odessa. Dr. Boyd testified that his practice as a chiropractor had never been interrupted. He testified outside the presence of the jury, for the purpose of the record, that he was arrested three or four times somewhere between 1955 and 1960 for practicing medicine without a license and that he was tried on one of these charges. The conviction in question was for a misdemeanor in the County Court of Ector County. Dr. Boyd did not admit that he was guilty of such offense. His license as a chiropractor has never been suspended. Also, outside the presence of the jury, Judge Selwyn S. Webber, one of the attorneys of record for appellee, testified that he was the County Judge of Ector County in April 1958, and the presiding Judge at the trial of the witness, Dr. Joe Boyd, for illegal practice of

medicine; that a judgment of conviction was entered in that case on April 29, 1958.

Appellee presented to the court her motion in limine to exclude from the jury the testimony concerning Dr. Boyd's arrests and conviction for the reasons that the offense did not involve moral turpitude, was a misdemeanor, was too remote and was not admissible for impeachment purposes. Appellee's motion in limine was sustained by the court. The court also refused to admit in evidence the testimony of Dr. Boyd on cross-examination concerning his several arrests and his 1958 conviction for the illegal practice of medicine. The trial of the instant case was in May of 1965.

■ Contrary to appellant's contention such action of the court does not constitute error. In the first place to render testimony concerning a witness' connection with crime admissible in civil cases to impeach or discredit him he must be shown to have been convicted of an offense involving moral turpitude or must presently admit his guilt of such offense. Associated Employers Lloyds v. Tullos, Tex.Civ.App., 197 S.W.2d 210. Dr. Boyd's 1958 conviction of the misdemeanor offense of practicing medicine without a license was not a conviction for an offense involving moral turpitude. The court therefore did not err in holding inadmissible the testimony concerning such conviction.

■ The record also shows that the trial of this case in May of 1965 was more than seven years after Dr. Boyd's conviction in April, 1958. Appellee contends that the conviction is inadmissible because it is remote. It is held, that the admissibility of a conviction of a criminal offense with regard to remoteness is a matter resting within the sound discretion of the trial court. Adams v. State Board of Insurance, Tex.Civ.App., 319 S.W.2d 750; United Benefit Fire Insurance Company v. Stock, Tex.Civ.App., 344 S.W.2d 941, and cases cited therein. It is our opinion that under the facts of this case the court did not abuse its discretion in instructing counsel for appellant

not to make statements or to interrogate witnesses relative to the conviction of Dr. Boyd for practicing medicine without a license, and in refusing to admit testimony of Dr. Boyd on cross-examination concerning his several arrests and conviction for the illegal practice of medicine.

■ In appellant's 4th, 5th, 6th and 7th points it is urged that the court erred in rendering judgment for appellee because, appellant contends, there is insufficient evidence to support the findings of the jury that appellee is totally and permanently disabled and such findings are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. In points complaining of the insufficiency of the evidence and that findings are against the great weight and preponderance of the evidence it is our duty to consider and weigh all of the evidence in the case. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660. The evidence shows that on March 18, 1963, when appellee sustained the injury complained of she was twenty-two years of age and was living with her sister in Big Spring. She was separated from her first husband and one of their three children was living with her. The two other children were living with their father's mother. Although there is some conflict in the evidence as to how the accident occurred, the evidence shows that appellee did fall in a sitting position on a concrete floor and thereby sustained an injury. The jury found that the fall caused total and permanent disability. Appellee worked the rest of the night after her fall and also worked the next day but did not thereafter return to her job at the Wagon Wheel.

Appellee then moved to Odessa to live with her mother, and after a few days was examined by Dr. Boyd. Dr. Boyd testified that he had previously seen appellee when she accompanied her mother who was receiving treatments and that on such prior occasion, which was before her fall, there was nothing wrong with appellee; but that when he examined her shortly after her

injury he found severe tenderness in the low back and across both hips; that she had difficulty in bending or moving and that pain radiated down the right leg and that the leg was very sore and tender. There were no marks on appellee's body but Dr. Boyd found that she was suffering from nervousness, with her spine, tightness in low back and hips, difficulty in moving, leg soreness and that her abdominal organs were sore; that she had difficulty in walking because of numbness in her legs; that she was suffering from headaches; that her back and both legs hurt and her legs felt numb. The evidence indicated that appellee had never before had any type of injury. Dr. Boyd expressed the opinion that appellee had a disc problem in the low back. He stated that he had seen and treated appellee on an average of about three times a week from her first visit to the time of the trial; that he had told appellee that she couldn't work and that his advice to her ever since the injury was to quit working. Dr. Boyd testified that appellee's condition was permanent and, in his opinion, she could not obtain and retain a job at shift work standing on her feet six to eight hours per day, five to seven days a week.

Dr. Henry T. Leigh, a medical doctor, examined and x-rayed appellee on March 5, 1965. He testified that his examination of appellee revealed muscle spasm in her neck and from her shoulders to her pelvis; that bending was decreased and all movements of her back were restricted. He stated that one of appellee's x-rays, plaintiff's exhibit 4, shows a loss of the normal curvature as a result of muscle spasm. This fact was confirmed by Dr. Carl Marcum who had conducted an examination of appellee at the request of appellant. Dr. Leigh testified that plaintiff's exhibit 11, which was an x-ray picture of the low back, showed a straightening of the normal curve which was compatable with muscle spasm. This fact was also confirmed by Dr. Marcum. Dr. Leigh expressed the opinion that the probable cause of appellee's condition was her fall; that she could not obtain and re-

tain a job performing the usual tasks of a workman where she was required to be on her feet, to bend and to stand for extended periods of time or waiting on tables. Dr. Leigh stated that in his opinion such condition of appellee is permanent and she will be handicapped as long as she lives.

Appellee's sister, Doris Mitchell, had worked two years as a car-hop for the Wagon Wheel in Big Spring immediately prior to appellee's injury there on March 18, 1963. She testified that she witnessed appellee's fall; that appellee begun to complain that her back was hurting immediately after the fall and that since then she has complained of her back and legs hurting all of the time; that although on some days she feels better than others, she still always complains of her back and legs hurting. She stated that she had lived with appellee intermittently since the fall and that she usually bought appellee's groceries.

Dr. Carl Marcum made an examination of appellee on October 19, 1964, at the request of appellant. Dr. Marcum stated that at the time of his examination appellee was complaining of pain in the lower back which was worse when she attempted to do any lifting and that her legs felt heavy. The doctor found that appellee was tender to pressure over the lumbar region, but said that he had no record of any complaints by appellee of any trouble in the area of the neck or spine, or of headaches. Appellant's exhibit 4 was an x-ray of the coccyx taken by Dr. Marcum. He stated that such x-ray showed abnormality of appellee's coccyx that could be either congenital or from an injury. Appellant's exhibit 5 was an x-ray of the lower lumbar vertebra and the upper part of the sacrum. Dr. Marcum stated that exhibit 5 indicated no abnormality in appellee's lumbar spine, also that appellant's exhibits 2 and 3 showed no abnormality, and that he found no displacement of any vertebra over another. Dr. Marcum also testified that appellee's exhibit 4, which was a side view x-ray of appellee's neck taken by Dr. Leigh on March 5, 1965, showed a straightening of

the normal curve of the neck that could have been from muscle spasm but could be from the way the x-ray was taken. Dr. Marcum testified that appellee's exhibit 11, a side view x-ray of appellee's lumbar curve was an abnormal situation indicating muscle spasm but that this could be by reason of her position before the x-ray camera; that appellee's exhibit 12, a front to back view of appellee's low back taken by Dr. Leigh on March 5, 1965, showed a slight curvature of the low back. Dr. Marcum also stated that he found specific evidence that appellee had at some time in the past sat down real hard and injured her coccyx and that he had seen x-rays which indicated to him muscle spasm, one of which was in the neck.

The evidence showed that while working at the Wagon Wheel in Big Spring appellee's best earning for any one week was $35.00 including tips and meals. Prior to appellee's employment at the Wagon Wheel she had worked only one week in her life and that was four years previously. About two months after her injury appellee began work for the Twilight Club in Odessa waiting on tables, seven days a week. Her earnings were $35.00 a week in salary and $5.00 to $10.00 a night in tips. She worked at that job for four and a half months with no time off, and then quit because her back was hurting. She stated that after one or two months she went to work for the Thunderbird Lounge in Midland, working seven days a week as a waitress and bartender for about one month and quit that job because her back was hurting. Her earnings at the Thunderbird were $35.00 a week in salary and $20.00 to $40.00 a night in tips. She left the Thunderbird and after about two months got a job at Buddy's Drive-In in Odessa as a car-hop. She worked there seven days a week for two months, earning $25.00 a week in salary, $1.25 a day for meals and $5.00 to $6.00 a day in tips. Appellee stated that she left Buddy's Drive-In because the boss was hard to get along with and she was cheated out of money. She stated she was able to do the work but also testified that she had trouble with her back while working there and that she had to see Dr. Boyd three times a week. After leaving Buddy's Drive-In she was out of work for about a month and was then again employed by the Twilight Club, earning the same wages and remuneration as she had earned there before. She continued with the Twilight Club for about three months and quit when she got married and moved with her husband to Kermit, where she lived for about six months, during which time she did not work. Appellee testified that during the three months that she was employed by the Twilight Club she went to see Dr. Boyd three times a week and received adjustments which permitted her to continue working. She stated that without such adjustment and treatment by Dr. Boyd she would not have been able to stay on the job.

The evidence shows that appellee separated from her husband on February 18, 1965, and returned to Odessa where she went to work for the Little Ace of Clubs as a waitress and bartender; that her earnings were $40.00 a week in salary and $1.00 to $2.00 a day in tips. On this job she "stocked the beer and things like that, had to lift it" and did not quit until about May 1st, 1965, prior to the trial. In connection with her last employment appellee stated that she was able to stay on the job regular hours at that kind of work. She testified, however, that the work caused her quite a bit of pain and that she went to Dr. Boyd more that she ever had when she was doing only bartender work. She stated that she left the Little Ace of Clubs because her back was getting in bad condition and that she had not worked for anyone since that time.

The evidence further shows that the only type of work which appellee knows is working as a waitress or barmaid; that she receives no child support from the father of the child she is supporting; that she has only been able to live because her sister, mother and friends help her. Appellee tes-

tified that at the time of the trial she was still suffering with her back, her legs and with headaches.

 It is held that the term "total incapacity" or "total disability" means that an injured person is disqualified from performing the usual tasks of a workman in such a way as to procure and retain employment. Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000. Appellant contends that appellee's own testimony as above indicated is that she has been able to procure and retain employment since the date of her injury; that for almost two years she was employed by five different employers, and that on jobs subsequent to her accidental injury she earned more money that she was earning at the time of her injury. Numerous cases have held, however, that the fact that a claimant continues to work and earn more money after an injury is not controlling on the question of total and permanent disability, but that it is evidence to be considered with other facts and circumstances before the jury. See Texas Employers' Insurance Association v. Smith, Tex.Civ.App., 374 S.W.2d 287; Texas Employers' Insurance Association v. Cummings, Tex.Civ.App., 364 S.W.2d 255. In Davies v. Texas Employers' Insurance Association (Tex.Com.App.), 29 S.W.2d 987, it is stated as follows:

"* * * In determining the question of total permanent disability, that determination will not be controlled necessarily by the fact that the injured employee has been able, since the injury, to earn money. While the testimony we have stated tends to show that the employee had not suffered a total incapacity for work, as a proximate result of his injuries, it is not of that nature and character which, as a matter of law, has the legal effect to nullify the testimony which tends to show that he had so suffered. The jury exercised its privilege to decide the issue presented from all the facts in evidence adversely to the defendant in error, and, the verdict being supported by substantial testimony, we are compelled to overrule these assignments."

 In our opinion the record as a whole supports the findings that appellee is totally and permanently disabled and such findings are not against the great weight and preponderance of the evidence. The evidence does show that appellee has been employed about half the time since her injury, by five different employers, and that she earned more money while working for said employers than she was earning at the time of her injury. There is, however, also evidence to the effect that during the entire period of her disability, except when appellee was in Kermit, she was treated by Dr. Boyd about three times a week and that she could not have worked without such treatments; that she has only been able to live and support her child because her sister, mother and friends are helping her.

The court did not err in rendering judgment for appellee for total and permanent disability. Appellant's points complaining of such action by the court are overruled.

The judgment is affirmed.