## MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. ANDERSON.

### No. 3067.

Court of Civil Appeals of Texas. Waco.

May 7, 1953.

Rehearing Denied June 4, 1953.

Naman, Howell & Boswell, Waco, G. H. Penland, Dallas, for appellant.

Clark & Fisher, Sleeper, Boynton, Darden & Burleson, Howard Walden, Waco, for appellee.

HALE, Justice.

Appellee brought this suit against appellant to recover damages on account of personal injuries inflicted upon him on July 19, 1950, when appellant's train crew, while engaged in a switching operation, caused its train to strike a box car spotted for unloading on a spur track opposite the warehouse of Bewley Mills. At the time of the collision a steel ramp extending from the warehouse to the car was down, the brakes on the car were set and appellee, an employee of Bewley Mills, was working inside the car. Appellee alleged that the train crew was negligent, among other particulars, in that they failed to give any notice or warning of danger prior to the time the approaching train struck the car and knocked it several steps down the track, tore the steel ramp and supports from the concrete side of the warehouse and knocked appellee backward in the car. Appellant admitted in its trial pleadings and by written stipulation that its train crew negligently permitted its locomotive to back freight cars onto the spur track adjoining the Bewley Mills property on the occasion in question and that such negligence proximately caused its train to strike the car in which appellee was working.

The case was tried before a jury on May 5, 1952. The jury found $17,750 to be the amount of money that would reasonably compensate appellee for the injury to him which was directly and proximately caused by appellant's train striking the car in which he was working. Based upon the stipulation of the parties and the findings of the jury, the court rendered judgment in favor of appellee for the amount of the found damages. Appellant seasonably filed and presented its motion for new trial which was overruled and it has duly perfected its appeal from such judgment and order.

The appeal is predicated upon two points of error as follows: the trial court erred in refusing to grant appellant's motion for new trial (1) "because the verdict of the jury awarding plaintiff $17,750 damages is supported by insufficient evidence and is contrary to the overwhelming weight of the evidence on the damage issue"; and (2) "because of the highly prejudicial and inflammatory argument of plaintiff's attorney to the jury inducing the jury to award damages to plaintiff because of his dangerous high blood pressure which had him 'sitting on top of a volcano' and disabled him, when all the evidence showed that such condition was in no way produced or aggravated by any act of defendant."

In passing upon appellant's first point of error, it is the duty of this court to consider and weigh all of the competent evidence introduced upon the trial which tended to throw any light on the nature, extent and duration of the injuries of which appellee complains and the amount of compensatory damages resulting therefrom. If it clearly appears from the record in its entirety that the findings of the jury on the issue of damages are against the great weight and preponderance of the evidence as a whole to such extent as manifestly to be wrong and unjust, then the point should be sustained; otherwise, it should be overruled. Briscoe v. Bronaugh, 1 Tex. 326; Choate v. San Antonio & A. P. Ry. Co., 90 Tex. 82, 37 S.W. 319; Federal Underwriters Exchange v. Hinkle, Tex.Civ.App., 187 S.W.2d 122, er. ref.; McLean v. McCollum, Tex.Civ.App., 209 S.W.2d 959, er. ref.; Missouri-Kansas-Texas R. Co. of Texas v. Webb, Tex.Civ.App., 229 S.W.2d 204, pts. 14–16, er. ref. n. r. e.; In re King's Estate (King v. King), Tex.Sup., 244 S.W. 2d 660.

The statement of facts in the case consists of 395 pages. Since appellant admitted liability for the injurious consequences of the collision, practically all of the evidence adduced upon the trial related to the damage issue. Of the ten witnesses who testified during the trial, six were laymen and

four were medical doctors, two of the doctors having been introduced on behalf of appellee and two on behalf of appellant. Any attempt to summarize all of the material testimony elicited from each of these witnesses would necessarily require this opinion to be extended beyond the length of propriety. Although we have duly considered all the evidence, it must suffice to mention briefly only the substance of what we regard as the most salient aspects of the same.

From the testimony of appellee and other lay witnesses who testified in his behalf, it appears that he was about fifty years of age at the time of the collision, had a life expectancy of approximately twenty years and was earning as take-home pay about $34 per week. At that time he was physically strong and capable of doing heavy manual labor, weighed 165 pounds and had been doing hard work continuously for thirteen years for Ruhmann Grain Company and Bewley Mills without the loss of any time on account of illness or injury. Appellee testified that he was in the act of unloading ten-pound sacks of meal from the box car at the time of the collision; that he had eight of the sacks stacked in his left arm with two sacks in his right hand, facing in a direction opposite to that from which the train came, when, without any notice or warning to him, the train struck the car in which he was standing with such force as to knock the car, with its brakes set, a distance of twelve or thirteen feet down the spur track; and that the force of the impact caused him to fall backward and to strike his back just above the belt line against some object.

Appellee further testified that after the collision he slid himself out of the car and, with the assistance of Charlie Spratt and Chester Harrison, two other employees of Bewley Mills, he made his way into the warehouse where he lay down on some sacks in order "to try to get myself together." In a short time his back and left leg began to hurt, the pain became more intense and he then walked about one block to his home, where he remained in bed until Mr. Carl, the bookkeeper for Bewley Mills, took him in an automobile to the office of Dr. R. B. Alexander for a medical examination. He was thereafter examined on different dates by Doctors Anspach, Souther and Richey. According to his testimony, he had never had any pain or trouble with his back before the collision but thereafter he was not free from pain for any appreciable time up to the date of trial on May 5, 1952; he continued to lose weight until he got down to 135 pounds, and, because of his painful and weakened condition, he was continuously unable to do any kind of work.

Doctors Alexander and Richey were introduced as witnesses on behalf of appellant. Dr. Alexander testified that he examined appellee on July 19, 1950, saw him again on July 20th and finally on July 22nd; that appellee complained of pain in his back and down his left leg, giving the following history: "while unloading box car, as I got to the door with sacks of meal, switch engine hit box car and I was thrown backwards against the door"; he did not take any X-ray pictures but from the manual examination which he made he found no demonstrable pathology, all symptoms being subjective; he strapped the patient's back and gave him some salicylate tablets to ease his pain; the last time he saw appellee on July 22, 1950, it was his opinion that the patient did not sustain an injury of any consequence, and that he could have continued to work from the day of the injury.

Dr. Souther examined appellee for the first time on August 23, 1950 and continued thereafter to treat him up to the time of the trial. He referred appellee to Dr. Anspach, an X-ray specialist, for the purpose of having X-ray pictures made. Dr. Anspach testified that on August 25, 1950 he made X-rays of appellee's dorsal spine, which showed hypertrophic lipping, such being a bony growth or calcium deposit around the vertebrae; he could not definitely classify such pathology as arthritis, although it appeared to him that the same should be placed in that classification; but, whether the pathology was or was not of arthritic origin, it definitely could have been caused by traumatic injury; a spine with arthritic or calcium deposits is more susceptible to traumatic injury than one not having calcium deposits; in his opinion, appellee

had the calcium deposits shown by his X-rays on and prior to July 19, 1950, but, in the light of the history given, he thought the injury to appellee's spine on the latter date was in reasonable probability the cause of the pain he had experienced since that time and that such pain would persist in the future because the pathological condition which he found was incurable.

Dr. Souther testified that on his first examination he took the patient's blood pressure, examined his heart, lungs and kidneys, palpated his back and chest, tested his reflexes and went over him generally. He found rigidity and muscle spasm in the patient's back and such objective findings were indicative of the pain of which the patient complained. He examined the X-rays which Dr. Anspach had made and they showed heavy lipping of the bodies of the 7th through 12th dorsal vertebrae, with light lipping of the 2nd, 3rd, 4th and 6th dorsal. (The 7th through the 12th dorsal vertebrae are those nearest the waist line.) He further stated that he had treated the patient with diathermic heat, linaments and sedatives at intervals of one, two or three weeks apart from the time he first examined him until the time of the trial and that, in his opinion, based upon all his findings, appellee was permanently incapacitated to do manual labor and his incapacity, as well as the pain he had suffered and would continue to suffer, was attributable to the traumatic injuries which he sustained in the collision.

Dr. Richey testified that he examined appellee on August 11, 1950, on February 16, 1951 and again on September 18, 1951 and on each occasion the patient was complaining of pain in his back and left leg. On each occasion he took X-rays and they showed arthritis or hypertrophic lipping of the vertebrae but he did not at any time find any muscle spasm, rigidity, impairment of motion or any objective symptom which he attributed to any accidental injury. In his first examination he did not note any high blood pressure, any abnormal heart condition or any decrease in sensory of the left leg, but in his third examination, as he reported to the attorney for appellant, he found an abnormally high blood pressure of 200 over 120, hypertension and arteriosclerosis, with a slight decrease of sensation in the left leg. The decrease of sensation indicated nerve deterioration. According to his testimony, high blood pressure and hypertension are not ordinarily caused by traumatic injuries but such condition may in some instances be aggravated by continued pain, worry and nervousness. He further stated that, in his opinion, the pathology which he found in appellee was due to an arthritic and diseased condition which existed in the patient's spine prior to the time of the collision and that the accident did not cause or materially contribute to cause the incapacity of which complaint was made.

█ The evidence as a whole was undoubtedly such as to warrant the jury in finding that appellee is totally and permanently incapacitated to labor and that he has suffered extreme pain and will continue to suffer such pain throughout the remainder of his life. The real issue before us reduces itself to a question of cause and effect. The basic question for our determination is whether or not the evidence was sufficient to warrant a finding that appellee's disability and suffering is in reasonable probability attributable to the collision, rather than to his pre-existing physical condition. Unless the evidence was clearly insufficient to support such a finding, then we could not say the answer of the jury to the damage issue was manifestly wrong or unjust, or that the amount of damages awarded was excessive.

█ As pointed out by the Supreme Court in the early case of Briscoe v. Bronaugh, 1 Tex. 326, the law "has no scales wherein to weigh the different degrees of probability; still less to ascertain what weight of evidence shall amount to proof of any disputed fact. * * * The law, therefore, refers the weight of evidence and the different degrees of probability to the jury, who are to be guided in their decision by their conscientious judgment and belief under all the circumstances of the case. And where the question is one of fact to be ascertained by the jury, from weighing the evidence and the degree of

probability, the court will not interpose for the purpose of granting a new trial unless it be in order to remedy some manifest error. * * * In such a case it is not enough that it is not clear that the verdict is right; but it must clearly appear that it is wrong to induce the court to set the verdict aside." The substance of these pronouncements has been applied many times by the courts of this state. In addition to the cases cited above, see also: Stroud v. Springfield, 28 Tex. 649, 650; Texas Employers Ins. Ass'n v. Birdwell, Tex.Civ.App., 39 S.W.2d 159, er. ref.; Freeman v. Great Atlantic & Pacific Tea Co., · Tex.Civ.App., 135 S.W.2d 267, er. ref.; McCrory's Stores Corp. v. Murphy, Tex.Civ.App., 164 S.W.2d 735, er. ref.; United States Fidelity & Guaranty Co. v. Carr, Tex.Civ.App., 242 S.W.2d 224, er. ref.; Etter v. Von Sternberg, Tex.Civ. App., 244 S.W.2d 321, er. ref.

■ Furthermore, the jurors were not conclusively bound in this case by the opinion evidence of the doctors as to the cause of appellee's disability and suffering and they would not have been so bound even though there had been no conflict in such opinions. It was not only within the province of the jury to pass generally upon the credibility of the witnesses and the weight to be given to their testimony, but in considering the degrees of probability involved in arriving at the true cause or causes of appellee's disability and suffering, the jurors could look to the testimony of the lay witnesses as well as the expert testimony of the doctors. Kennedy v. Upshaw, 66 Tex. 442, 1 S.W. 308; Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W. 2d 581; Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Howell v. Continental Casualty Co., Tex.Civ.App., 110 S.W.2d 210, er. dism. Gulf Casualty Co. v. Bostick, Tex.Civ.App., 116 S.W.2d 915, er. dism.

■ After due consideration of the entire record, we cannot say it clearly appears therefrom that the findings of the jury on the damage issue are against the great weight and preponderance of the evidence as a whole to such extent as manifestly to be wrong or unjust. Therefore, appellant's first point of error is overruled.

■ Pertinent to appellant's second point, it appears that one of appellee's attorneys, in his closing argument to the jury, made the following remarks: "The doctor says that he has got a blood pressure of 200 over 120, as if he was sitting on top of a volcano, and every one of you would know that. He didn't have that blood pressure when he first went to Dr. Richey. He has got it now. What brought it about? What produced it?" The qualification attached to the bill reflecting the foregoing remarks discloses that no objection was made and no exception was taken to such argument, or any part thereof, until after the jury had been excused. The qualification also shows affirmatively that the trial court thought such remarks were fair and reasonable deductions from the evidence in the case and were properly made in reply to the argument of opposing counsel.

Although there was no direct evidence showing the deleterious effect on appellee of his high blood pressure or that the same was brought about or produced by the collision, we think the facts stated in the argument, as well as the questions propounded therein and the inferences sought to be drawn therefrom, were reasonably deducible from all the circumstances in evidence. Moreover, even though the argument could be regarded as improper, it was not of such inflammatory nature that its prejudicial effect, if any, could not have been cured by its withdrawal or by an instruction from the court to the jury not to consider the same. Therefore, since appellant failed to interpose any objection to such remarks at the time they were made, we cannot say the action of the court in refusing to grant appellant a new trial on that ground constituted error. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Mullens v. Texas Indemnity Ins. Co., Tex. Civ.App., 158 S.W.2d 861, pt. 7, er. ref.; Snodgrass v. Robertson, Tex.Civ.App., 167 S.W.2d 534, pts. 16–17, er. ref.; Alexander Trust Estate v. Lindsey Drug Co., Tex.Civ.

App., 214 S.W.2d 475, pts. 10–11, er. ref.; Van v. Webb, Tex.Civ.App., 237 S.W.2d 827, pts. 11–12, er. ref.

Accordingly, the judgment appealed from must be and it is hereby affirmed.

TIREY, J., took no part in the consideration or disposition of this case.