MARYLAND AMERICAN GENERAL IN-
SURANCE COMPANY, Appellant,

v.

G. T. LEFFINGWELL, Jr., Appellee.

No. 668.

Court of Civil Appeals of Texas,
Corpus Christi.

March 16, 1972.

Branscomb, Gary, Thomasson & Hall, Gary Norton, Corpus Christi, for appellant.

Edwards & DeAnda, David L. Perry, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

Our opinion of January 27, 1972 is withdrawn, and this opinion reaching the same conclusion is substituted therefor.

This is a workman's compensation case. G. T. Leffingwell, Jr., the injured workman, sued Maryland American General Insurance Company, the workmen's compensation insurance carrier, to recover total and permanent disability benefits as a result of injuries sustained by him on February 27, 1970.

Trial was to a jury. In answer to special issues, the jury found that (1) the accidental injury of February 27, 1970 was the producing cause of total incapacity; (2) the beginning date of total incapacity was April 27, 1970; (3) it was permanent; and (4) payment of compensation in weekly installments instead of a lump sum will result in manifest hardship and injury to plaintiff. Based on the jury verdict, the trial court entered judgment that G. T. Leffingwell, Jr. recover workmen's compensation benefits from the insurance carrier in the total sum of $17,236.57 for total and permanent incapacity. Maryland American General Insurance Company has duly and timely perfected its appeal. We affirm.

■ Appellant, by its first, second and third points of error, challenges the jury findings that appellee sustained total and permanent incapacity after April 27, 1970. These points are "no evidence", "factually insufficient evidence" and "against the great weight and overwhelming preponderance of the evidence" points. The principles of law governing the consideration and disposition of these points are well settled.

■ In considering the "no evidence" points, this Court is required to consider only the evidence and the inferences favorable to the jury findings and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup. 1965); Charles T. Picton Lumber Company v. Redden, 452 S.W.2d 713 (Tex.Civ.App.— Corpus Christi 1970, writ ref'd n. r. e.). We are without authority to disregard the jury findings in response to special issues where there is some evidence of probative value in the record to support them. Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600 (1951); Garza v. Anderson, 417 S.W.2d 368 (Tex.Civ.App.—Corpus Christi 1967, n. w. h.).

■■ In considering the "factually insufficient evidence" and "contrary to the great weight and overwhelming preponderance of the evidence" points, we are required to review all the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). It must clearly appear that the answers by the jury are clearly wrong before an appellate court may set them aside. Missouri-Kansas-Texas R. Co. of Texas v. Anderson, 258 S.W.2d 375 (Tex.Civ.App. —Waco 1953, writ ref'd n.r.e.); State v. Dehnisch, 437 S.W.2d 46 (Tex.Civ.App.— Corpus Christi 1968, n. w. h.).

Appellee, an electrician, was injured on February 27, 1970, when he fell approximately 40 feet from a light pole (on which he was working) to the ground. It was

admitted that he was injured in the course of his employment. It was stipulated that he was totally disabled from February 27, 1970 until April 26, 1970.

As a result of the fall, appellee sustained injuries to his chest and back, including fractures of the transverse processes on the right of all five lumbar vertebrae which were displaced from one-quarter to three-quarters inch within his body, and a compression fracture of the fifth lumbar vertebra extending into the joint space. He was hospitalized for 20 days and was in a body cast from his neck to his hips until April 13, 1970, when he was placed in a corset. Although not medically released, he returned to work on April 27, 1970. When queried as to what prompted him to return to work before being released by the doctor and while he was still suffering pain from his injuries, he testified that his family experienced financial difficulties during the two months that he was off from work. During this interval their savings were exhausted. Payments on previously purchased items had to be made and bills were coming due. He further testified that his family could not live on the $49.00 per week compensation benefit that was being paid to him, and that he had to go back to work even though his injuries were still causing him considerable pain.

The jury heard extensive testimony as to appellee's work, injuries, disability and work history. Witnesses included appellee, his wife, his immediate supervisor for his employer, and two orthopedic surgeons, Dr. Barnes and Dr. Isensee. Appellee, age 34, had been employed as an electrician since 1955 and had worked as such continuously since that date. After his injury, he continued to be employed by his employer. The evidence conclusively showed that he was an exceptionally good employee whom his employer desired to keep.

The usual and ordinary work that appellee was trained to do and did perform prior to his injury involved hard work. His job required installing heavy electrical equipment, climbing and working on light poles, crawling through attics and under houses, bending metal conduit pipe, pulling wire through conduits, changing heavy motors, getting up on platforms, and carrying heavy loads. Since his return to work following his injury, he has been unable to perform any heavy work that requires extensive stooping, bending, pulling, crawling, climbing or lifting. There are many jobs that he could not perform after his injury that he did perform before he was hurt. He has been relegated to light work only. Oftentimes, a helper is required for appellee to do the work that formerly he did alone. Since the injury, appellee's employer, at appellee's request, has kept him off of the heavy jobs except with the aid of a helper.

Appellee consistently worked overtime before he was injured. In 1969, the year before his injury, he worked overtime in each of 50 weeks in the year. After his return to work on April 27, 1970, until August 3, 1970, he worked overtime only on occasion. Following Hurricane Celia, which struck Corpus Christi on August 3, 1970, he worked extensive overtime for several weeks due to the emergency situation that existed in the Corpus Christi area. The emergency lasted for about three weeks; during this period of time appellee worked twelve hours per day, seven days a week, and, in his words, "Well, it just about did me in". His back began to give him so much trouble that he had difficulty in getting out of bed, and his family doctor ordered him to refuse all overtime and strenuous work. In November 1970, appellee stopped most overtime work. During the six months preceding the trial, he worked very little overtime and during several weeks in that interval failed to put in a full 40 hours. Appellee's normal work week was five days, Monday through Friday, eight hours per day. He asked his employer not to work him overtime in a single day because "if I put in over eight hours a day, by the end of eight hours my pain is increased quite a bit and if I work longer it's just going to get that much worse." He did, however, agree, if need be, to work up

to eight hours on Saturday, which would constitute overtime for the week. He further testified "There's quite a few things that I don't do anymore that I used to do in routine days", stating these things to be "climbing poles, working off of poles, like that, installing lights, repairing lights, crawling in through attics, under houses; installing heavy equipment and work requiring heavy equipment, heavy rolls of wire, stuff like that, I have got to have someone with me to do the physical work that I can't do, that I used to but I can't go up poles anymore or repair." He further stated that he had pain all the time, twenty-four hours a day, the intensity of which builds and decreases, but never quits entirely.

Dr. Barnes, who examined appellee shortly before trial, made objective findings of a persistent muscle spasm in the back which prevented appellee from tilting his spine backward past the vertical position, displaced fractures of the transverse processes, reversal of the lumbar lordotic curve and a compression fracture to the fifth lumbar vertebra. On direct examination, he stated: "My opinion is that this man very possibly has a ruptured intervertebral disc between the fourth and fifth lumbar vertebra on the left side; in addition to that, I think he has had mechanical damage on the left side to the small joint between the fourth and fifth lumbar vertebra". On cross-examination, he said: "I don't really believe that Mr. Leffingwell has yet developed a ruptured intervertebral disc. My contention was that due to the location of the fracture and the type of fracture he has had to damage this annular ligament and I feel that he will eventually develop a ruptured intervertebral disc". In response to a question by counsel for appellant concerning something that may or may not occur in the future, Dr. Barnes replied: "I think it's already occurred. I'm afraid I'm not getting my point across to you. This man has had a fracture of the body of the fifth lumbar vertebra with deformity of a lateral nature to the left which is, if you will, either a subluxation or partial dislocation of this small joint is taking place", and "So every time the man moves his back, he is going to have pain".

Dr. Barnes diagnosed continuing and permanent disability from the injuries and concluded that appellee is disabled from doing any work involving repetitive bending, stooping or lifting of heavy objects, or working in awkward positions. He further stated that appellee's back injuries had not healed, that the work performed by appellee subsequent to his injury was harmful to his back, that he suffered obvious pain in performing heavy work, that his condition was permanent, and that he had prescribed surgery to be performed when appellee's pain became completely disabling and intolerable to him. In his opinion, the time for surgery had arrived but he would leave that decision entirely up to appellee.

Appellant called Dr. Isensee as its medical witness. He treated appellee following the accident, but had not seen or examined him since May, 1970, some ten months prior to trial (March, 1971). He considered appellee's injuries to be to the low back. He anticipated that appellee "would have permanent residual disability as a result of those injuries". Appellee had not been complaining of long term sciatica, and he did not believe that appellee had sustained a disc injury. He agreed that Dr. Barnes, who had access to the medical records incidental to appellee's hospitalization as well as the x-rays that were taken in January, 1971, and who had examined appellee in January and in March, 1971, was in a better position than he to evaluate appellee's condition at the time of trial. Dr. Isensee's testimony as to appellee's condition was based on his treatment of appellee from February 27, 1970 to May, 1970, plus an examination of the recent x-rays. He stated that appellee, in May, 1970, was still having some difficulty with his back but his "complaint at that time was slight back soreness with fatigue". He did not know whether appellee's difficulty had improved or degenerated since his last examination. Dr. Isensee was then

told in great detail of appellee's complaints and of Dr. Barnes' objective findings. He then stated that such complaints and findings presented a much more severe situation than he believed to exist in May, 1970, which complaints and findings, if true, in his opinion, would make the existence of a disc injury a probability. He agreed that if the pain was as bad as appellee represented it to be and if there had actually been a development of long term sciatica that appellee should not do repetitive bending, stooping and lifting work, changing out motors, crawling under houses or in attics, or do any work that caused him pain. However, he further testified that the results of the tests performed by Dr. Barnes on appellee did not conclusively establish a disc injury, and were not consistent with continuous and severe sciatic pain, as claimed by appellee.

Prior to the injury, appellee bowled three nights a week. In December, 1970, he resumed bowling, but only on one night a week. Dr. Isensee said that bowling "will make a sore back sorer", and that he did not think that appellee would want to bowl if he had sciatic pain. The record does not reveal that appellee told Dr. Barnes of his bowling subsequent to his injury. The fact that appellee did bowl one night a week, Dr. Isensee's comments thereon, and whether or not Dr. Barnes knew of this activity, were before the jury. They are not conclusive of the extent of appellee's injury but are merely evidence to be considered by the jury along with other facts and circumstances presented. See Consolidated Casualty Insurance Co. v. Baker, 297 S.W.2d 706, 715 (Tex.Civ.App.—Waco 1956, writ ref'd n. r. e.), and the cases cited therein.

Finally, Dr. Isensee agreed that a fairly severe muscle spasm that was easily seen and felt and that resulted in a flattening of the lumbar lordotic curve would be another objective symptom that would tend to support the conclusion that appellee had disc involvement.

The trial court, in the charge, instructed the jury that "'total incapacity' does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment". No one objected to such instruction. In our opinion, the evidence is abundantly sufficient, both legally and factually, to support the conclusion that appellee could not go out, get and keep a job such as he had before his injury. The "usual and ordinary tasks of a workman", under the evidence in this case, require repetitive bending, stooping and lifting. The jury was justified in finding that appellee is unable to obtain and retain employment requiring the performance of the usual and ordinary tasks of a workman.

■■ It is well settled that the fact that an injured employee continues to work after his injury is not at bar to recovery for total and permanent disability if the evidence supports a fact finding that he is so disabled. Texas State Highway Department v. Kinsler, 230 S.W.2d 364 (Tex.Civ.App.—Beaumont 1950, writ ref'd); Aetna Casualty & Surety Company v. Depoister, 393 S.W.2d 822 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.). It is equally well established that an injured workman is not barred a recovery for total and permanent disability simply because he earns more money after the injury than he earned prior thereto. Travelers Insurance Company v. Buffington, 400 S.W.2d 800 (Tex.Civ.App.—Eastland 1966, writ ref'd n. r. e.); Trinity Universal Insurance Company v. Scott, 342 S.W.2d 348 (Tex.Civ.App.—Ft. Worth 1961, writ ref'd n. r. e.), and the many cases cited therein.

■ The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence presented to it. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Travelers Insurance

Company v. Wade, 373 S.W.2d 881 (Tex. Civ.App.—Dallas 1963, writ ref'd n. r. e.); Royal Indemnity Company v. Smith, 456 S. W.2d 218 (Tex.Civ.App.—Ft. Worth 1970, n. w. h.). Any doubt as to whether the evidence adduced at the trial supports the jury finding of permanent incapacity must be resolved in favor of the injured workman. Bailey v. American General Insurance Company, 154 Tex. 430, 279 S.W.2d 315, 318 (1955); Jones v. Texas Indemnity Ins. Co., 223 S.W.2d 286, 288 (Tex.Civ.App. —El Paso 1949, writ ref'd); Travelers Insurance Company v. Arnold, 378 S.W.2d 78, 83 (Tex.Civ.App.—Dallas 1964, n. w. h.).

The medical evidence in this case is comprehensive and detailed. The testimony of Dr. Barnes covers 79 pages in the statement of facts; that of Dr. Isensee covers 121 pages. Direct and cross-examination of each medical witness was most thorough. When all of the medical evidence as to the nature of appellee's injury is analyzed, it is apparent that there are some areas of conflict and contradiction in the testimony of Dr. Barnes and that of Dr. Isensee. Both were experts. However, the jury is the exclusive judge of controverted issues of fact raised by the evidence, of the credibility of the witness, and of the weight to be given their testimony. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958). The conflicts in the evidence must be resolved by the jury for it is the province of the trier of facts to determine the weight to be given the evidence and to reconcile conflicts or inconsistencies therein. Texas Employers' Insurance Association v. Cross, 358 S.W.2d 156 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.); Texas Employers' Insurance Association v. Brinkley, 349 S.W.2d 321 (Tex.Civ.App.—Ft. Worth 1961, wr. ref. n. r. e.); Texas Employers' Insurance Association v. Price, 336 S.W. 2d 304 (Tex.Civ.App.—Eastland 1960, n. w. h.). The verdict in this case makes it clear that the jury accepted the testimony of Dr. Barnes, appellee's witness, to the effect that appellee was totally and permanently disabled. The expert testimony of Dr. Barnes is consistent with appellee's complaints and description of his condition.

We do not agree with appellant that this case is controlled by the decision in Fidelity & Casualty Company of New York v. Burrows, 404 S.W.2d 353 (Tex.Civ.App.— San Antonio 1966, writ ref'd n. r. e.), a workmen's compensation case. That case would be persuasive if the evidence in that case was essentially the same as the evidence here. Such is not the fact. Upon careful analysis of the cited case, we are convinced that the Burrows case and the instant case are clearly distinguishable on the facts. In the Burrows case, the jury findings supported the testimony of the claimant's family doctor, a general practitioner, but were contra to the testimony of the orthopedic surgeon who examined the claimant on April 17, 1964. Here, both Dr. Barnes and Dr. Isensee are orthopedic surgeons, but Dr. Isensee had not examined appellee within the ten months' period immediately preceding trial, while Dr. Barnes had made such an examination; the fact findings are consistent with the testimony of Dr. Barnes. Furthermore, in the Burrows case, the claimant's immediate supervisor did not notice anything wrong with his work, he performed his work with no apparent handicap and there was no evidence of hardship that would compel the claimant to work in spite of incapacity. Exactly the opposite is present in the case before us.

We have reviewed all of the evidence in the record. We have considered all of the evidence from all sources, and bearing in mind the legal definition of "total incapacity" as submitted in the court's charge, we do not believe that the jury's finding of total permanent incapacity in this case is so against the great weight and preponderance of the evidence as to be manifestly unjust. We find that there is ample evidence of probative value to support the jury's findings of total permanent incapacity of appellee. We, therefore, overrule appellant's first, second and third points.

**622**

Appellant next complains, in its fourth point of error, that the trial court erred in refusing to permit it to offer testimony before the jury and to cross-examine Dr. Barnes about the purpose and effect of corrective back surgery on appellee. It asserts, in its fifth point of error, that the trial court erred in instructing the jury that it shall not take into consideration nor consider in any way the outcome of any surgery that may or may not be performed on appellee's back.

On direct examination, Dr. Barnes testified that he had prescribed surgery for appellee and that, in his opinion, the time for the same had arrived. On cross-examination, counsel for appellant inquired as to the type of surgery to be performed and as to the type of diagnostic tests to be performed prior to surgery. On redirect examination, Dr. Barnes volunteered the statement that if the surgery was successful that appellee might be able to do more strenuous work than he could do in his present physical condition. All such evidence was received without objection. After Dr. Barnes had concluded his testimony, counsel for appellant requested that he be permitted to further cross-examine Dr. Barnes and to offer testimony before the jury about the purpose and effect of corrective surgery. This was refused by the court and a bill of exception was duly taken by appellant. Then, counsel for appellee requested that the jury be then and there instructed to disregard any evidence as to the possible beneficial effects of surgery. This request was likewise refused. However, the trial court, in the charge to the jury, did instruct it not to "take into consideration nor consider in any way, the outcome of any surgery that may or may not be performed in the future."

■ We first consider appellant's fifth point. The record before us does not reveal that appellant made any objection to the court's charge. The statement of facts, duly signed and approved by the trial judge, makes no mention of any such objections. The transcript does not contain any such objections. Nowhere is there any showing that any written objections to the charge were made by appellant or that the trial judge endorsed his ruling and official signature thereon. There has been no compliance with Rule 272, Texas Rules of Civil Procedure. In this state of the record, appellant's objection to the stated instruction contained in the court's charge was not preserved for appellate review. Grabes v. Reinhard Bohle Machine Tools, Inc., 381 S.W.2d 395 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Bituminous Casualty Corporation v. Moore, 396 S.W.2d 249 (Tex.Civ.App.—Tyler 1965, writ ref'd n. r. e.). Appellant's fifth point is overruled.

■ Appellant's fourth point cannot be sustained. At the time of trial, appellee had not undergone surgery. The trial court's action in refusing to permit the introduction of testimony or the cross-examination of Dr. Barnes about the purpose and effect of surgery to correct any physical impairment to the back of appellee was proper. Our Supreme Court has expressly held in Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521 (1960), that the alleged or probable effects of future surgery, which has not been performed at the time of trial may not be introduced in evidence at the trial of a workmen's compensation case. The trial court correctly excluded this testimony. See also Texas Employers' Insurance Association v. Shannon, 462 S.W.2d 559, 565 (Tex.Sup. 1970); Commercial Standard Insurance Company v. Cotton, 443 S.W.2d 423, 426 (Tex.Civ.App.—Eastland 1969, writ ref'd).

■ As already noted, Dr. Barnes testified that he had prescribed surgery for appellee. Appellant did not object to such testimony. Such evidence was admissible to show the seriousness of appellee's condition. Insurance Company of North America v. Myers, 411 S.W.2d 710, 713 (Tex.Sup. 1966); Aetna Casualty & Surety Company v. Brown, 463 S.W.2d 473, 476 (Tex.Civ. App.—Ft. Worth 1971, writ ref'd n. r. e.);

Travelers Insurance Company v. Walkovak, 390 S.W.2d 75, 77 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.).

■ Furthermore, if the exclusion of the testimony complained of under appellant's fourth point was error, then it was harmless because no harm resulted to appellant as a result of the trial court's action. Rule 434, T.R.C.P. Appellant's fourth point is overruled.

The judgment of the trial court is affirmed.